

# In the
# Missouri Court of Appeals
## Western District

| | |
|---|---|
| RUSTY ARCHER, | WD77320 Consolidating |
|     Appellant-Respondent, | WD77321 & WD77322 |
| v. | OPINION FILED: |
| CITY OF CAMERON AND MIDWEST PUBLIC RISK OF MISSOURI, | FEBRUARY 10, 2015 |
|     Respondent-Appellants, | |
| TREASURER OF THE STATE OF MISSOURI- CUSTODIAN OF THE SECOND INJURY FUND, | |
|     Respondent. | |

**Appeal from Labor and Industrial Relations Commission**

**Before Division One: Thomas H. Newton, P.J., Lisa White Hardwick, Anthony Rex Gabbert, JJ.**

City of Cameron and its insurer, Midwest Public Risk of Missouri ("Employer" collectively), appeal the final award of the Labor and Industrial Relations Commission granting Rusty Archer permanent total disability benefits, medical expenses, and future medical care for a 2008 work injury. Employer asserts three points of error. First, Employer contends that the Commission erred as a matter of law in awarding permanent total disability for a 2008 work injury suffered by Archer because the Commission failed to apply the appropriate statutory standard in determining the nature and extent of Archer's disability from that injury. Second, Employer contends that the Commission erred as a matter of law in awarding Archer medical

expenses.  Third, Employer contends that the Commission erred in awarding Archer future medical treatment.  We affirm.

On January 16, 2008, Archer, during the course of his employment with the City of Cameron, struck a manhole while driving a skid loader.  The impact caused the skid loader to stop abruptly and caused Archer to hit the windshield and lose consciousness.  Immediately after regaining consciousness, Archer felt neck, thoracic, and low back pain.  Archer underwent care for cervical thoracic and cervical strains.  He received a myriad of prescription medication, physical therapy and epidural injections without relief.  In March of 2008, Dr. Daniel Bruning of PainCARE assessed Archer with low back pain, lumbar disk displacement, thoracic spine pain with spondylosis and trigger points at T6-T7 cervicalgia with bursitis, and rotary cuff syndrome AC joint of the left shoulder.  On July 7, 2009, Dr. Terrance Pratt performed an independent medical examination and found the 2008 injury as the prevailing factor of cervicothoracic syndrome, cervical spondylolisthesis, low back pain, L5-S1 disk herniation, lumbar spondylolisthesis, chronic thoracic discomfort with radicular-type symptoms and left shoulder syndrome.  Several doctors issued permanent restrictions and ratings as a result of the 2008 accident.

Archer continued to work for the employer, with accommodations, from the fall of 2008 until September 16, 2010.  During that time, Archer received assistance from coworkers if he was unable to perform work tasks.  He did not perform repetitive heaving lifting as he had done prior to the accident.  He took frequent breaks where he sat in his truck throughout the workday in an effort to alleviate his pain.  Sometimes Archer's coworkers would assist him in sitting down.  Archer frequently missed work due to pain and sometimes had to leave work early.  Archer's absences were deducted from his sick and vacation pay.

On September 1, 2010, Archer sustained another injury while bending over to shape a newly formed curb of concrete. Archer's foot slipped, causing a twisting and jarring sensation to his mid to low back. He was diagnosed with chronic and acute thoracic strain, myofascial syndrome, chronic lumbar strain and muscle spasms.

Archer brought two compensation claims against Employer. The first, Injury Number 08-011470, sought benefits for the 2008 accident. The second, Injury Number 10-075527, sought benefits for the 2010 accident. The claims were consolidated and an administrative hearing was held on April 1, 2013. The administrative law judge (ALJ) found that Archer sustained 35% permanent partial disability from the 2008 injury and awarded past medical expenses and future medical care. The ALJ found that Archer sustained 7.5% permanent partial disability from the 2010 injury. The ALJ found Archer permanently and totally disabled from the combined effect of the two injuries and awarded permanent total disability against the Second Injury Fund.

The Fund appealed the ALJ's award on the 2010 claim. The Fund contended that the ALJ's award was against the great weight of the evidence because no credible evidence was produced that demonstrated permanent disability from the 2010 accident and without such disability there could be no Second Injury Fund liability. The Fund also claimed that the ALJ misinterpreted the medical records in finding disability from the 2010 accident where no doctor testified to that effect. Archer did not dispute the ALJ's awards, but because the Fund appealed the 2010 claim, Archer appealed the ALJ's award on the 2008 claim to preserve his rights pending the outcome of the Fund's appeal. The Employer appealed nothing.

On January 30, 2014, the Commission issued its Final Award on the 2008 claim and found that the overwhelming weight of the evidence favored a finding that Archer was rendered permanently and totally disabled by the effects of the 2008 injury considered in isolation. The

3

Commission concluded that, in the ordinary course of business, any employer would not reasonably be expected to hire Archer given his physical condition as it existed at the time of his January 2008 injury and expect him to perform the duties of the job in the manner in which they are customarily performed. The Commission determined that, Archer had been able to continue work after the 2008 injury because the employer accommodated his restrictions, but he was not performing the usual duties of his employment in the manner that the duties are customarily performed by the average person engaged in such work. The Commission found that, Archer's continued work did not prove that he could compete for work in the open labor market. The Commission adopted the ALJ's awards of past medical expenses and future medical care. As to the 2010 claim, the Commission issued its Final Award Denying Compensation and reversing the ALJ's award. It concluded that Archer sustained no permanent partial disability from the 2010 injury.

In concluding that the overwhelming weight of the evidence favored a finding that Archer was rendered permanently and totally disabled by the effects of the 2008 injury considered in isolation, the Commission found credible the opinion of Dr. James Stuckmeyer who conducted a physical examination of Archer and reviewed voluminous medical records regarding his work injury. Stuckmeyer concluded that Archer's pain increased after the 2010 accident, but that by the time Stuckmeyer examined him in February of 2011, Archer had "essentially returned to baseline in regard to his spinal complaints." Stuckmeyer believed that Archer's 2010 injury did not cause the need for any additional physical restrictions and did not result in any additional physical limitations. Stuckmeyer ultimately formed the opinion that Archer was permanently and totally disabled as a result of the 2008 accident.

The Commission also found credible the opinion of Dr. Eden Wheeler who first examined Archer approximately five months after the January 16, 2008, accident. Wheeler found that Archer reached maximum medical improvement as of September 4, 2008. Wheeler examined Archer again after the 2010 accident and reviewed Archer's medical records. Wheeler was unable to identify any additional disability caused by the 2010 injury.

The Commission found credible the opinion of Dr. Mary Middleton who examined Archer prior to the 2010 accident and until December, 2012. Middleton testified that across that period of time, Archer's physical condition stayed essentially the same. The Commission concluded that it accepted "the unanimous opinion of the medical experts that employee sustained no new disability as a result of the 2010 injury."

The Commission compared the testimony of the two vocational experts, Michael Dreiling and James England, who both considered Archer to be permanently and totally disabled. The Commission found Dreiling's testimony that, after considering Archer's physical restrictions and limitations, as well as his education, training, vocational experience and appearance, no employer in the usual course of business would reasonably be expected to hire Archer in the physical condition in which he was left after the 2008 injury, to be "well-founded and credible." The Commission accepted England's conclusion that Archer is permanently and totally disabled, but found England's opinion that it was a combination of the 2008 and 2010 accidents that rendered him permanently and totally disabled to be unsupported by medical evidence. The Commission made this determination based on England's reliance on Archer's lay opinion of what Archer thought rendered him permanently and totally disabled. The Commission found the vocational opinion of Dreiling more persuasive than the opinion of England regarding the issue of when Archer became permanently and totally disabled. The Commission concluded that

5

Dreiling formed his opinion after considering Archer's perception of his condition as well as the opinions of medical experts, while England did not consider all medical opinions and, therefore, "lacked a clear understanding of employee's functional restrictions resultant from each accident."

Employer appeals the Commission's determination that Archer was permanently and totally disabled by the 2008 injury and appeals the Commission's awards of past medical expenses and future medical treatment.

Our review of the Commission's decision is governed by article V, section 18, of the Missouri Constitution and Section 287.495, RSMo 2000. Article V, section 18, provides for judicial review to determine whether the Commission's award is authorized by law and supported by competent and substantial evidence upon the whole record. "If supported by such evidence (and in the absence of fraud), the Commission's findings of fact are conclusive[.]" *Coday v. Division of Employment Sec.*, 423 S.W.3d 775, 778 (Mo. banc 2014). Section 287.495 requires that we affirm the decision unless the Commission acted in excess of its powers, the award was procured by fraud, the facts do not support the award, or insufficient competent evidence exists in the record to warrant the making of the award. We give no deference to the Commission's interpretation and application of the law and review the same *de novo*. *Pierson v. Treasurer of State*, 126 S.W.3d 386, 387 (Mo. banc 2004).

In Employer's first point on appeal, Employer contends that the Commission erred as a matter of law in awarding permanent total disability for the 2008 injury by failing to apply the appropriate statutory standard in determining the nature and extent of Archer's disability from the 2008 injury. Employer argues that Section 287.020.6, RSMo Cum. Supp. 2008, defines "total disability" as the inability to return to any employment and the undisputed evidence demonstrated that Archer returned to work after the injury, continued to work full time for

6

Employer for three years, and his work during this period was not sporadic, limited, or highly accommodated, such as would render Archer permanently and totally disabled. Employer states that "[t]he primary issue, whether the Commission erred in applying and construing Section 287.020.6 governing total disability, is one of law."

"Under Section 287.020, the term 'total disability' is defined as the 'inability to return to any employment and not merely . . . inability to return to the employment in which the employee was engaged at the time of the accident.'" *Scott v. Treasurer of State-Custodian of Second Injury Fund*, 417 S.W.3d 381, 386 (Mo. App. 2014) (internal quotations and citations omitted). The well established test for determining permanent total disability is '"whether the worker is able to compete in the open labor market."' *Id.* at 387 (quoting *Molder v. Missouri State Treasurer*, 342 S.W.3d 406, 411 (Mo. App. 2011) (internal quotations and citations omitted). The ability to compete in the open labor market hinges on whether, in the ordinary course of business, any employer would be reasonably expected to hire the individual given his or her present physical condition. *Id.* "Whether a particular employee is permanently and totally disabled is a factual question." *Rader v. Werner Enterprises, Inc.*, 360 S.W.3d 285, 301 (Mo. App. 2012).

Employer contends that the Commission failed to correctly apply the law in determining whether Archer's 2008 injury, in isolation, created his total and permanent disability. In support of this contention, Employer argues that in finding Archer to be permanently and totally disabled from the 2008 injury alone, the Commission failed to adhere to the statutory definition of "total disability" which is defined as the inability to return to *any* employment. In essence, Employer contends that Archer's return to work proves he was not permanently and totally disabled. Employer acknowledges that Archer returned to work with restrictions and "accommodations," but nevertheless contends that the Commission made the erroneous general conclusion that

7

restricted or accommodated employment does not constitute employment in the open labor market.

We find no evidence that the Commission made the aforementioned general conclusion. To the contrary, the Commission's conclusions regarding Archer's ability to compete in the open labor market spoke directly to Archer's abilities, Archer's disabilities, and the specific circumstances under which Archer returned to work after the 2008 injury. The record reflects that the Commission applied the "test" for determining permanent total disability and considered Archer's ability to compete in the open labor market and whether an employer would reasonably be expected to hire Archer given his physical condition after the 2008 injury. Employer's argument that the Commission failed to subscribe to the statutory definition of "total disability" ignores that the test applied by the Commission is a well-established precedential explication of the statutory definition of "total disability." *See Kinyon v. Kinyon*, 71 S.W.2d 78, 82 (Mo. App. 1934).

Similarly, Employer's argument that, "the Commission could not reasonably find or infer claimant was unable to return to any reasonable or normal employment or occupation" given the "undisputed evidence" that Archer continued working for the employer after the work injuries, is not a question of inappropriate application of the law to the facts as Employer contends. The law is well settled that an employee can be totally and permanently disabled without becoming completely inactive or inert. *Id.*; *Scott*, 417 S.W.3d at 387. "'Missouri courts have made clear that the Commission is not prevented from finding that a claimant is permanently and totally disabled simply because he or she holds limited, sporadic and/or highly accommodated employment." *Schussler v. Treasurer of State-Custodian of Second Injury Fund*, 393 S.W.3d 90, 97 (Mo. App. 2012) (*quoting Molder v. Mo. State Treasurer*, 342 S.W.3d 406, 412 (Mo. App.

8

2011). "A claimant's good fortune in obtaining work other than through competition does not preclude a finding of total disability." *Id.* (internal quotation and citation omitted). "[T]he test is whether the claimant could compete in the open labor market." *Id.*; *See also Underwood v. High Road Industries, LLC*, 369 S.W.3d 59, 66-67 (Mo. App. 2012).

Hence, Employer's claim that the Commission misapplied the law because the law does not allow for a finding of permanent total disability if a worker continues to work after an injury is unsupported by precedent. Employer's dispute is not a question of law but a question of whether the Commission's determination that Archer was permanently and totally disabled by the 2008 accident, in light of Archer's continued employment after the accident, was supported by sufficient competent and substantial evidence. *Hampton v. Big Boy Steel Erection*, 121 S.W.3d 220, 222-223 (Mo. banc 2003).

"[W]hether a particular employee is permanently and totally disabled is a factual, not a legal question." *Molder*, 342 S.W.3d at 409. "Employability is a matter within the Commission's expertise" and we are not to "substitute our judgment for that of the Commission." *Stewart v. Zweifel*, 419 S.W.3d 915, 918 (Mo. App. 2014). Even if the evidence lends itself to differing factual inferences, we are obligated to defer to the Commission's findings unless those findings are unsupported by competent and substantial evidence. *Pace v. City of St. Joseph*, 367 S.W.3d 137, 150 (Mo. App. 2012).

The record reflects that the testimony of Dr. Stuckmeyer, Dr. Middleton, Dr. Wheeler, and vocational expert Michael Dreiling, all support a finding that Archer was permanently and totally disabled as a result of the 2008 injury alone. Beyond Archer's numerous physical limitations, the record reflects that Archer's work history has been exclusively in manual labor positions. Archer has only a tenth grade education. He attempted twice, unsuccessfully, to obtain a G.E.D.

9

In high school, Archer was placed in special education classes. He had trouble reading and comprehending what he read and was diagnosed with dyslexia. As an employee, Archer avoided reading and doing paperwork. He was unable to obtain management positions because of paperwork requirements.

Given this evidence, which reflects that Archer's work options outside of manual labor employment are minimal, and the evidence regarding Archer's physical condition and medical diagnoses resulting from the 2008 work injury, the Commission's conclusion that Archer was unable to compete in the open labor market because no employer would be reasonably expected to hire him given his physical condition was supported by sufficient competent and substantial evidence. Point one is denied.[1]

In Employer's second point on appeal, Employer contends that the Commission erred as a matter of law in awarding Archer past medical expenses in the amount of $37,874.58. In Employer's third point on appeal, Employer argues that the Commission erred in awarding Archer future medical treatment.

Archer brought two compensation claims against Employer. The first, Injury Number 08-011470, sought benefits for the 2008 accident. The second, Injury Number 10-075527, sought benefits for the 2010 accident. An administrative hearing was held on the consolidated claims on April 1, 2013. Two issues specifically addressed at that hearing, as set forth in the Administrative Law Judge's (ALJ) "Findings of Fact and Rulings of Law" were "[w]hether Employer is liable to Employee for unpaid medical expenses in the amount of $37,874.58" and,

---

[1]Although not addressed in Employer's point relied on, Employer argued in the body of its brief and orally that, if this court affirms the award of permanent total disability for the January 16, 2008, injury, Employer is entitled to a credit against permanent disability owed for the amount of wages paid to Archer between September 5, 2008 and October 1, 2011. Claims of error raised in the argument portion of a brief that are not raised in the point relied on are not preserved for our review. *Cordes v. Williams*, 201 S.W.3d 122, 131 (Mo. App. 2006).

"[w]hether Employer is liable to the Employee for future medical care in order to cure and relieve the effects from the January 16, 2008, injury." The ALJ found the Employer liable for both. The Second Injury Fund appealed the ALJ's findings regarding Fund liability for the 2010 injury, specifically arguing that the great weight of the evidence proved that the 2008 injury caused Archer's permanent total disability. The issues of Employer liability for past medical expenses, and Employer liability for future medical care, were not appealed to the Commission and the Commission affirmed the ALJ's award on these matters.

"An issue appropriate for, but not addressed with the [C]ommission, cannot be litigated on appeal." *St. John's Mercy Health System v. Division of Employment Sec.*, 273 S.W.3d 510, 516 (Mo. banc 2009). As the issues Employer raises in Points two and three were not raised before the Commission, they were not preserved for review. *Donovan v. Temporary Help*, 54 S.W.3d 718, 719 (Mo. App. 2001). Points two and three are dismissed.

We conclude, therefore, that the Commission did not err as a matter of law in awarding permanent total disability for Archer's 2008 work injury. Upon review of the whole record, we find that, the Commission did not act in excess of its powers, the facts found by the Commission support the award, and the Commission's award is supported by sufficient competent evidence. We affirm the Commission's award.

_____
Anthony Rex Gabbert, Judge

All concur.

11