

# In the Missouri Court of Appeals
# Eastern District

DIVISION TWO

| | | |
|---|---|---|
| JAMES WURTH, | ) | No. ED107335 |
| | ) | |
| Appellant, | ) | Appeal from the Labor and |
| | ) | Industrial Relations Commission |
| v. | ) | |
| | ) | |
| | ) | |
| TREASURER OF MISSOURI AS | ) | |
| CUSTODIAN OF THE SECOND INJURY | ) | |
| FUND, | ) | |
| | ) | |
| Respondent. | ) | Filed: October 8, 2019 |

## OPINION

James Wurth ("Wurth") appeals the Labor and Industrial Commission's ("Commission") award affirming and adopting the Administrative Law Judge's ("ALJ") award denying permanent disability benefits from Second Injury Fund ("Fund"). In his sole point on appeal, Wurth argues the Commission erred in finding he was permanently and totally disabled before his work injury on November 4, 2008 because it did not base its decision on substantial competent evidence. We affirm.

## BACKGROUND

In 2002, Wurth began working for Commercial Electronics, Inc. ("Employer"), which serviced headsets used by fast food workers at drive-thru windows. On November 4, 2008, Wurth sustained a low back disc injury while carrying a heavy cable box. Wurth settled with

Employer for 25% disability to the body as a whole and proceeded with a claim for compensation against the Fund. A hearing was held before the ALJ on January 2, 2018.

Prior to his November 2008 injury, Wurth sustained previous work-related injuries in 1987, 1999, and 2001, while employed at Allied Gear and Machine Company ("Allied"). After treatment for the 2001 injury, Allied discharged him.

Wurth sought other employment and was retained by Employer as an hourly computer technician and assembler. Despite ongoing treatment and symptoms from his previous injuries, Wurth worked as an assembler, eventually becoming an assembly manager. Wurth testified that prior to his November 2008 injury, he worked up to ten hour shifts and seldom required time off. After treatment for his November 2008 work-related injury, Wurth was released to return to work in March 2009. He became a salaried employee, serving as an electrical tech supervisor. This position provided more flexible hours off the production lines, and allowed him to rest as needed. On January 23, 2012, Employer dismissed Wurth from employment. After being discharged, Wurth unsuccessfully sought other employment opportunities.

Dr. David Volarich ("Dr. Volarich") testified on behalf of Wurth and was the only medical expert to testify in this case. Dr. Volarich conducted four independent medical evaluations of Wurth in February 2000, December 2001, January 2008, and September 2009. Dr. Volarich testified after every injury, Wurth's spine worsened. As a result, he recommended specific physical restrictions. His 2000 evaluation recommended a 20-pound lifting restriction, avoid remaining in a fixed position for more than 30 minutes at a time, that Wurth stretch, move about frequently, and rest when needed. The 2001 evaluation was similar, but decreased Wurth's lifting limit to 10-15 pounds and specified he should rest in a supine position. In his 2008 report, Dr. Volarich further restricted handling any weight greater than 10 pounds and he should not

2

remain in a fixed position for any more than 20-30 minutes at a time (including both sitting and standing). He also recommended that he "change positions frequently to maximize comfort and rest when needed, including resting in a recumbent fashion." In his 2009 report, Dr. Volarich's restrictions were similar to those in his 2008 report, with the exception of decreasing the time Wurth should remain in a fixed position.

In addition to these recommended restrictions, Dr. Volarich's January 2008 report included a description of Wurth's then existing job duties and physical limitations. He noted Wurth worked 10 hours days performing light assembly duties in February 2007. During the evaluation, when asked how his injury affected his ability to perform his work, Wurth replied that "he has pain with climbing stairs and being on his feet for long periods of time. He takes breaks when needed and often lies down in his office. He can't do any heavy lifting now and has slowed down considerably." He also advised that Wurth could maintain his job as a manufacturing manager, but needed to be in a sedentary to light duty capacity. He opined that if Wurth lost his job at that time, it would be difficult for him to find employment in the open labor market.

Dr. Volarich testified Wurth's job had become more administrative in nature as a manufacturing manager since this position required him to oversee employees and "he really wasn't doing labor type work." He also explained that Employer "allowed him to lie down in the office during the day when needed to take a break . . . He could come and go as he pleased pretty much." He further opined Wurth's employability in the open labor market was based on Wurth "being accommodated and allowed to lie, down, take a nap, rest, go home early, come in late . . . That's not typical in the open labor market by any stretch."

After Wurth's November 2008 injury, Dr. Volarich again examined and evaluated Wurth in September 2009. He noted Wurth's low back complaints had become more severe and now included right leg radiant pain. He concluded Wurth is permanently and totally disabled as a direct result of the work-related November 4, 2008 low back injury in combination with his preexisting medical conditions. However, Dr. Volarich reiterated on cross-examination that without the accommodations made by Employer, Wurth would not have been employable in the open labor market as of January 2008.

In March 2010, approximately 14 months after the accident, James England, Jr. ("England"), a vocational rehabilitation counselor, evaluated Wurth. He opined that Employer provided him with "quite a bit of accommodation" prior to his injury in November 2008, and he had been "more and more accommodated after the [2008] injury." In January 2017, Gary Weimholt ("Weimholt"), a vocational rehabilitation counselor, performed a vocational assessment and testified on behalf of the Fund. He reviewed the medical records of the treating doctors, Dr. Volarich's reports and depositions as well as the depositions of Wurth and England. He concluded Wurth had been unemployable in the open labor market since December 2001 or January 2008, as either assessment would have independently taken Wurth out of the open labor market. He explained that the restrictions in Dr. Volarich's 2001 evaluation

> [N]ever got better, [Wurth] had this specialized situation when he returned to work with a great deal of accommodation. He required further evaluation and treatment, significant treatment. He was on narcotic medication. I think you can go back to there. But I also think that Dr. Volarich['s] [assessment] in 2008 takes him out as well.

On March 29, 2018, the ALJ entered his award denying compensation for benefits holding Wurth was ineligible because he was already permanently and totally disabled prior to his November 2008 accident. The ALJ held "the evidence compels a conclusion that [Wurth's]

4

accommodations at work in January 2008 were sufficient to reduce his employability to characterize his employability as not in the open labor market and conclude that he was permanently and totally disabled at that time."

Wurth appealed the ALJ's decision to the Commission. On October 12, 2018, the majority[1] of the Commission affirmed and adopted the ALJ's attached and incorporated by reference the ALJ's award and decision.[2]

This appeal follows.

### *Standard of Review*

On appeal, this court reviews only questions of law and we may modify, reverse, remand for rehearing, or set aside the Commission's award upon a finding that: "(1) the commission acted without or in excess of its powers; (2) the award was procured by fraud; (3) the commission's factual findings do not support the award; or (4) there was not sufficient competent evidence in the record to warrant the making of the award." *Greer v. SYSCO Food Services*, 475 S.W.3d 655, 664 (Mo. banc 2015); Section 287.495.1.[3] In reviewing the Commission's decision, we determine whether the award is supported by competent and substantial evidence upon the whole record. *Miller v. Mo. Highway & Transp. Comm'n*, 287 S.W.3d 671, 672 (Mo. banc 2009); Mo. Const. art. V, § 18. "An award is supported by competent and substantial evidence unless it is against the overwhelming weight of the evidence." *Lewis v. Kansas Univ. Med. Ctr.*, 356 S.W.3d 796, 800 (Mo. App. W.D. 2011). This Court defers to the Commission's findings on

---

[1] A dissenting opinion was filed by one member of the Commission.
[2] The Commission affirmed and adopted the award of the ALJ except as corrected in its supplemental decision, in which it corrects typographical errors and clarifies that there is no basis for an attorney lien because there was no compensation awarded to Claimant.
[3] All further statutory references are to RSMo (2016).

5

issues of fact, the credibility of the witnesses, and the weight given to conflicting evidence; however, questions of law are reviewed *de novo*. *Treasurer of State–Custodian of Second Injury Fund v. Witte*, 414 S.W.3d 455, 460 (Mo. banc 2013). We examine the ALJ's findings as adopted by the Commission where, as here, the Commission affirms and incorporates the ALJ's decision in its award. *Kolar v. First Student, Inc.*, 470 S.W.3d 770, 774–75 (Mo. App. E.D. 2015).

## ANALYSIS

In his sole point on appeal, Wurth argues the Commission erred in finding Wurth was permanently and totally disabled before his November 4, 2008 injury because its decision was not supported by substantial competent evidence. Specifically, Wurth argues the evidence presented before the ALJ supported a conclusion that prior to his 2008 work-related injury, he was not severely limited or highly accommodated because he worked a full time job for years.

"The purpose of the [F]und is to encourage the employment of individuals who are already disabled from a preexisting injury, regardless of the type or cause of that injury" by ensuring that an employer is only liable for the disability caused by the work injury. *Witte*, 414 S.W.3d at 460. In order to be entitled to Fund liability, a claimant must prove that either "the preexisting partial disability combined with a disability from a subsequent injury to create a permanent and total disability, or the two disabilities combined result in a greater disability than that which would have occurred from the last injury alone." *Highley v. Von Weise Gear*, 247 S.W.3d 52, 55 (Mo. App. E.D. 2008). Whether a claimant is permanently and totally disabled is determined upon the claimant's ability to compete in the open labor market. *Lewis v. Treasurer of State*, 435 S.W.3d 144, 159 (Mo. App. E.D. 2014); *Archer v. City of Cameron*, 460 S.W.3d 370, 376 (Mo. App. W.D. 2015). The critical question is whether an employer

6

can reasonably be expected to hire the injured employee, given his or her present physical condition, and reasonably expect the employee to successfully perform the work; the worker is not required to be inert or completely inactive. *Lewis*, 435 S.W.3d at 159; *Schussler v. Treasurer of State-Custodian of Second Injury Fund*, 393 S.W.3d 90, 96 (Mo. App. W.D. 2012).

"Whether a particular employee is permanently and totally disabled is a factual question" within the Commission's expertise. *Archer*, 460 S.W.3d at 375; *Schussler*, 393 S.W.3d at 96. As a result, the Commission need not rely exclusively on the testimony of medical experts in determining the degree of a claimant's disability; rather, it may consider all the evidence and the reasonable inferences drawn from that evidence. *Schussler*, 393 S.W.3d at 96.

Pursuant to our limited scope of appellate review, we find the Commission's determination that Wurth was permanently and totally disabled prior to his employment with Employer is supported by substantial competent evidence. The record demonstrates the Commission considered the testimony of Wurth, Dr. Volarich, England, and Weimholt, as well as Wurth's medical records in determining Wurth's ability to compete in the open labor market. The Commission resolved the conflicting evidence and ultimately determined Dr. Volarich's testimony in conjunction with the vocational experts' testimony was most credible on this issue. This court defers to the Commission's findings as to weight and credibility of testimony and is bound by its factual determinations, as the Commission is free to believe or disbelieve any evidence. *See Patterson v. Cent. Freight Lines*, 452 S.W.3d 759, 764 (Mo. App. E.D. 2015).

In reaching its decision, the Commission noted Wurth was unemployable in the open labor market prior to his injury in November 2008. Considering the restrictions Dr. Volarich had recommended and the accommodations provided by Employer, Wurth was considered to be unemployable in the open labor market since January 2008. Dr. Volarich testified "[y]ou know,

7

he is being accommodated. If you're accommodated and allowed to lie down, take a nap, rest, go home early, come in late, just about anyone can do that. That's not typical in the open labor by any stretch."

Although Wurth's testimony disputed that he was accommodated to the extent he could lie down, the Commission attributed more weight to the testimony of Dr. Volarich, which was consistent with his records at the time of his evaluation. "When evidence before the Commission would warrant either of two opposed findings, we are bound by the [Commission's] determination, and it is irrelevant that there is supportive evidence for the contrary finding." *Thompson v. Treasurer of Missouri*, 545 S.W.3d 890, 894 (Mo. App. E.D. 2018). Given this deference, when presented with the entire record, we conclude the decision is supported by substantial competent evidence.

Moreover, Wurth's argument centers on the fact that he was engaged in "regular, full-time work" when determined to be "totally disabled." However, Wurth's maintaining employment with Employer does not bar a finding he was permanently and totally disabled. *See Schussler*, 393 S.W.3d at 97. "Missouri courts have made clear that the Commission is not prevented from finding that a claimant is permanently and totally disabled simply because he or she holds . . . highly accommodated employment." *Id.* The record as a whole establishes Wurth suffers from complications from his previous work-related injuries and his position with Employer was highly accommodated. Therefore, despite the conflicting evidence presented by Wurth that he had a full time job and the extent of the accommodations provided by Employer, the Commission's award is supported by competent and substantial evidence on the whole record.

Therefore, on this record, we find the Commission did not err in finding Wurth was unable to compete in the open labor market prior to his November 2008 injury.

Point denied.

## CONCLUSION

For the foregoing reasons, the Commission's award is affirmed.

_____
Lisa P. Page, Judge


Philip M. Hess, P.J. and Kurt S. Odenwald, J., concur.