

# Missouri Court of Appeals
## Southern District

### In Division

WILLIAM B. WATSON, )
)
           Respondent, )
)
    vs. ) Nos. SD37293 and SD37294
) CONSOLIDATED
TUTHILL CORPORATION and )
SENTRY INSURANCE COMPANY, ) **Filed: July 19, 2023**
)
           Appellants, )
)
And )
)
TREASURER OF THE STATE OF )
MISSOURI AS CUSTODIAN OF THE )
SECOND INJURY FUND, )
)
           Respondent. )

APPEAL FROM THE LABOR AND INDUSTRIAL RELATIONS COMMISSION

**<u>AFFIRMED</u>**

William Watson ("Claimant") injured his lower back while in the course and scope of his employment with Tuthill Corporation ("Employer"). When Claimant returned to work months later, he injured his neck. Claimant then filed workers' compensation claims for both injuries. The Labor and Industrial Relations Commission ("Commission") adopted the decision of the administrative law judge ("ALJ"), who found, among other

things, that both injuries were compensable and that Claimant's lower back injury, in isolation, rendered him permanently and totally disabled.

Employer and its insurer appealed, challenging the prevailing factor findings, the sufficiency of the evidence to support a finding of permanent total disability as opposed to permanent partial disability, and the determination that the Second Injury Fund ("Fund") bore no liability to compensate Claimant. We affirm because the award is supported by substantial and competent evidence and the Commission did not err in finding the Fund is not liable to Claimant.

## Background

Claimant worked 28 years for Employer, often putting in 80 hours of work per week. Most of that time he worked as a service technician, tearing down and repairing rotary air equipment. Claimant sustained various injuries through the years, none of which prevented him from returning to full-time work without restrictions.

In April of 2015, Claimant's lower back popped when he caught a falling motor. He immediately felt pain emanating from his lower back and traveling down his right leg. We will refer to this accident and the lower back injury therefrom as the "Back Injury."[1] Medications, injections, and therapy did not alleviate his pain. Claimant underwent surgery to decompress and fuse part of his lumbar spine in August of 2015. The surgical intervention improved but did not completely resolve Claimant's symptoms.

On January 25, 2016, Claimant returned to full-time work performing basically the same teardown and repair tasks he did prior to the Back Injury. Claimant had difficulty

---

[1] Our references combining "accident" and "injury" are for convenience and to distinguish between incidents occurring at different times. In doing so we have not forgotten these terms reference interrelated but separate concepts in workers' compensation law.

getting up and down and could not do some things he could before his Back Injury, like lifting heavy parts. Claimant had to take breaks to lie down for 10-20 minutes 3-5 times per day, plus additional rest time over his lunch break. On February 1, 2016, Claimant was using a pneumatic tool at work when he twisted his neck and heard it crack or pop. He immediately felt tightness in his neck and upper back. We will refer to this accident and the neck injury therefrom as the "Neck Injury." Claimant's neck was treated with heat, manipulation, and traction.

Claimant attempted to work after his Neck Injury. He worked slowly, took several breaks throughout the day, and after each day of work he had to take a day or two off to recover. In the ten weeks after the Neck Injury, Claimant worked only two or three days per week and exhausted his accrued paid leave. On April 23, 2016, he decided to retire because he could no longer do the job and because he did not want to have his employment terminated due to absenteeism. Claimant did not reach maximum medical improvement for the Back Injury until July of 2016.

Claimant filed separate claims for his Back Injury and Neck Injury. At a hearing on both claims, the ALJ received testimony from Claimant's medical expert, Dr. Koprivica, who opined that the work accident was the direct, proximate, and prevailing factor causing the Back Injury, which, in isolation, rendered Claimant permanently and totally disabled. Employer's medical expert, Dr. Belz, opined that occupational exposure was not a prevailing or substantial factor causing Claimant's Back Injury. Dr. Belz found neither the Back Injury nor the Neck Injury, in isolation, met the requirements for permanent total disability, but when considered together with all prior injuries and a non-work-related degenerative condition, Claimant was permanently and totally disabled.

3

Claimant testified that he was unable to do his job any longer. He attributed his inability to work to the Back Injury. Claimant cannot stand on a hard surface for more than 20-30 minutes at a time, he cannot lift more than 15 pounds repetitively, he cannot sit upright in a chair for more than 20 minutes at a time, and he cannot look down to do work at a desk for more than five to ten minutes at a time.

Claimant's vocational expert opined that Claimant was unemployable in the open labor market and is permanently and totally disabled. Although other injuries were considered, the expert's determinations were based on the Back Injury in isolation. Employer's vocational expert did not believe Claimant was unemployable or permanently and totally disabled, but she deferred to Dr. Belz's determination regarding Claimant's permanent and total disability.

As relevant to this appeal, the ALJ found: (1) work was the prevailing factor for Claimant's Back Injury and Neck Injury; (2) the Back Injury in isolation rendered Claimant permanently and totally disabled as of July 18, 2016, the date of his maximum medical improvement; and (3) Fund is not liable because Claimant's "last injury" was the Back Injury, not the Neck Injury. Employer applied for review by the Commission, which issued final awards affirming and incorporating the ALJ's decisions. Employer appealed both awards. We consolidated those appeals for all purposes.

**Legal Principles**

"The Commission's decision must be 'supported by competent and substantial evidence upon the whole record.'" ***Swafford v. Treasurer of Missouri***, 659 S.W.3d 580, 582 (Mo. banc 2023) (quoting Mo. Const. art. V, sec. 18). We review only questions of law and may modify, reverse, remand for rehearing, or set aside the award only on the grounds provided in § 287.495.1 RSMo. (2016) and no other. ***Id.*** Where, as here, the

4

Commission affirms and incorporates the ALJ's award and decision, we treat the ALJ's findings as part of the award of the Commission. ***Nichols v. Belleview R-III Sch. Dist.***, 528 S.W.3d 918, 921 fn.2 (Mo.App. 2017). Absent fraud, the Commission's factual findings are conclusive and binding. ***Swafford***, 659 S.W.3d at 582.

The relevant history and purpose of the Fund was summarized in ***Dubuc v. Treasurer of State - Custodian of Second Injury Fund***, 597 S.W.3d 372, 377 (Mo.App. 2020) (internal punctuation and citations omitted):

> Section 287.220 establishes the Second Injury Fund. The General Assembly created the Second Injury Fund in an effort to encourage the employment of individuals who are already disabled from a preexisting injury, regardless of the type or cause of that injury. The existence of the Fund ensures that an employer is only liable for the disability caused by the work injury. The Fund's liability for permanent partial and total disability claims is statutorily limited, however, to the parameters described in section 287.220.

We take Employer's points out of order for ease of analysis.

### Sufficiency of Evidence (Points III and IV)

Employer contends the Commission's award was not supported by competent and substantial evidence because Dr. Koprivica's opinion, on which the Commission relied for its prevailing factor finding, was without a substantial basis in fact and was contrary to evidence that Claimant's spinal condition was pre-existing and degenerative.

In worker's compensation cases, it is not uncommon for appellants to combine two distinct legal challenges into one. The first type of challenge is evidentiary: that an expert's testimony is inadmissible and should be disregarded because it does not satisfy the requirements of § 490.065 RSMo. (Cum. Sup. 2017). *See, e.g.*, ***Hogenmiller v. Mississippi Lime Co.***, 574 S.W.3d 333, 336-37 (Mo.App. 2019) (§ 490.065 is the standard used to evaluate admissibility of expert testimony in workers' compensation

5

cases). This type of challenge is preserved by a timely objection at the time the evidence is offered. ***Rhoden v. Missouri Delta Med. Ctr.***, 621 S.W.3d 469, 483-4 (Mo. banc 2021). The second challenge goes to the weight of the evidence: that an expert's opinion is less credible or persuasive than other testimony or evidence before the factfinder. *See, e.g.*, ***Comparato v. Lyn Flex West***, 611 S.W.3d 913, 921-23 (Mo.App. 2020). This type of challenge often arises through the introduction of contrary evidence or by impeachment of an expert witness in cross-examination. ***Williams v. Treasurer of Missouri***, 598 S.W.3d 180, 188 (Mo.App. 2020). Uncontradicted and unimpeached testimony may be disbelieved, but the Commission must make express credibility findings to do so. ***Id.***

"As a rule, questions regarding the sources and bases of expert witness testimony and opinions affect the weight, not the admissibility, of such evidence." ***Mansil v. Midwest Emergency Med. Servs., P.C.***, 554 S.W.3d 471, 475 (Mo.App. 2018). "The weight afforded a medical expert's opinion is exclusively within the discretion of the Commission." ***Mirfasihi v. Honeywell Fed. Mfg. & Techs., LLC***, 620 S.W.3d 658, 666 (Mo.App. 2021) (quoting ***Beatrice v. Curators of Univ. of Missouri***, 438 S.W.3d 426, 435 (Mo.App. 2014)). Despite these longstanding principles, Employer, like many others appealing a worker's compensation award, argues the Commission and this court must ignore or disregard an expert's opinion, entered into the record without a foundational objection, under the theory that "objective medical findings shall prevail over subjective medical findings." Section 287.190.6(2) RSMo. (2016).

Section 287.190.6(2) RSMo. (2016) does place limits or conditions on disability awards but does not go as far as Employer argues. A disability claim shall be demonstrated and certified by a physician, and medical opinions must be stated within a

reasonable degree of medical certainty. ***Id.*** Entry of an award not supported by such evidence would violate § 287.190.6(2) RSMo. (2016). The objectivity portion of the statute only arises in cases where these conditions are satisfied AND two or more inconsistent or conflicting medical findings or opinions have been submitted.

Such is the case here. Employer does not argue that expert medical testimony was unnecessary, that Dr. Koprivica was unqualified to offer expert medical opinions, or that his opinions were based on incomplete or unreliable facts or data. Both doctors met with Claimant personally and reviewed the same medical records consisting of objective test results, diagnostics, and medical procedures. Having reviewed those records and Dr. Belz's findings, Dr. Koprivica was confident in his findings and opinions to a reasonable degree of medical certainty. Employer's argument is that Dr. Belz's opinions and conclusions were *more* consistent with and *better* explained Claimant's medical history and records than Dr. Koprivica's findings and opinions.

In a battle of experts where both rely on and cite to objective medical records and diagnostics to support their findings and opinions, § 287.190.6(2) RSMo. (2016) does not compel the Commission or this court to discount or disqualify *either* opinion. Rather, the determination of which expert's findings and opinions are *more* persuasive or *better* account for objective examinations and test results falls within the general authority to determine witness credibility. "[W]here the right to compensation depends on which of two medical theories should be accepted, the issue is peculiarly for the Commission's determination." ***Mirfasihi***, 620 S.W.3d at 666.

In this case, the ALJ considered and summarized the medical opinions, then found Dr. Koprivica's findings and opinions more credible than Dr. Belz's as to the cause of

Claimant's permanent total disability.[2] "Ultimately, we are presented with two dueling experts. The Commission believed Dr. [Koprivica]. That is its prerogative." *Comparato*, 611 S.W.3d at 923.[3] We will not disturb that determination on appeal. *Menley v. JJF & C, LLC*, 637 S.W.3d 687, 690 (Mo.App. 2021).

Employer alternatively asserts that even if the Back Injury was compensable, the evidence only proves the injury resulted in permanent partial disability, not permanent total disability.

We evaluate sufficiency-of-evidence challenges by examining the evidence in the context of the whole record; therefore, an appellant must:

1. Marshal all record evidence favorable to the award;

2. Marshal all unfavorable evidence, subject to the Commission's explicit or implicit credibility determinations; and

3. Show in the context of the whole record how the unfavorable evidence so overwhelms the favorable evidence and its reasonable inferences that the award is, in context, not supported by competent and substantial evidence.

*Doe Run Co. v. Fenwick*, 599 S.W.3d 906, 907 (Mo.App. 2020) (internal punctuation omitted).

Employer acknowledges this framework but does not successfully implement it. The section of its brief where Employer indicates it is presenting evidence favorable to the award includes only cursory mention of Dr. Koprivica's testimony and testimony of Claimant's vocational expert, followed by substantial and extended argument why this

---

[2] The ALJ's findings reflect a careful parsing of witness credibility as to the two claims, causation, and extent of disability. While Dr. Belz was found less credible as to the cause of Claimant's permanent total disability, he was found to be more credible than Dr. Koprivica as to the necessity of future medical treatment for the Neck Injury.

[3] Because Dr. Koprivica's report is sufficient alone to support the challenged finding, we do not consider Appellant's argument that the ALJ misconstrued Dr. Belz's report.

8

testimony lacks probative value, much of which is contrary to the ALJ's express credibility determinations. In a separate section, Employer presents other evidence unfavorable to the award, at least some of which is contrary to the ALJ's express credibility determinations. No section of the brief is dedicated to the third step of the analysis.

The insurmountable obstacle in this point on appeal is the ALJ's express findings on credibility of witnesses. When express credibility determinations are made, a challenge to the sufficiency of the evidence is a "non-starter." *Id.* at 908 fn.3. Because we are bound by these determinations, evidence contrary to credibility determinations cannot be considered on appeal and is irrelevant. *Comparato*, 611 S.W.3d at 921. Had the Commission found Employer's experts more credible on this issue and ruled accordingly, then Employer would enjoy the same advantage on appeal that Respondents now do.

The awards are supported by competent and substantial evidence on the whole record. Points III and IV are denied.

### Last Injury (Points I and II)

Employer contends that the Commission applied the wrong legal standard in finding that the Back Injury, not the Neck Injury, was the "last injury" for purposes of § 287.220.3 RSMo. (Cum. Supp. 2013). Employer notes that "last injury" is not a defined term in workers' compensation law, and argues that it must mean an injury that is "last in time" or "occurring after all others." If the Neck Injury was the "last injury," no evidence would support a finding that the Neck Injury resulted in permanent total disability, so the award cannot stand.

"'[I]f a claimant's last injury in and of itself rendered the claimant permanently and totally disabled, then the Second Injury Fund has no liability and employer is responsible

for the entire amount.'" ***Lewis v. Treasurer of State***, 435 S.W.3d 144, 157 (Mo.App. 2014) (quoting ***Hughey v. Chrysler Corp.***, 34 S.W.3d 845, 847 (Mo.App. 2000)).  To be entitled to permanent total disability benefits from the Fund, a claimant[4] must meet two conditions:

1. The claimant has a qualifying preexisting disability; and

2. The claimant sustained a subsequent compensable work-related injury that, when combined with the preexisting disability . . . results in a permanent total disability.

***Swafford***, 659 S.W.3d at 583 (citing § 287.220.3(2)(a)a and b RSMo. (2016)).  Of these two conditions, "[T]he claimant must establish *first* the extent or percentage of the [permanent total disability] resulting from the last injury alone and *then* the *combination* of the last injury and a prior  [permanent partial disability] *resulted* in permanent and total disability." ***Bennett v. Treasurer of State***, 607 S.W.3d 251, 256 (Mo.App. 2020) (emphasis added).

Following this formula, Employer's claim of error fails.  If the Neck Injury was the last injury, as Employer claims, the extent or percentage of permanent total disability resulting from it was nothing.  As Employer acknowledges, the medical experts opined that the Neck Injury resulted in no impairment or only minor (i.e. 10% or less) permanent *partial* disability of the body as a whole.  Accordingly, the ALJ found no permanent total disability resulting from the Neck Injury.  Claimant has not raised this finding as erroneous on appeal.

---

[4] Fund contends the determination of its non-liability is final and cannot be raised by Employer in this appeal because Employer and Fund are separate parties with separate potential liability for Claimant's injuries, only a claimant may initiate a claim against the Fund, the claim against the Fund was resolved by the ALJ in Fund's favor, and Claimant did not seek review of the Fund non-liability determination by the Commission or by a cross-appeal.  Our resolution of this matter does not require us to address this argument.

The second step is even more problematic for Employer because it did not show how the *combination* of the last injury and a prior permanent partial disability resulted in permanent total disability, as is required for the Fund to be liable under § 287.220.3(2)(b) RSMo. (Cum. Supp. 2013). Substantial evidence supports the ALJ's finding that the Back Injury alone rendered Claimant permanently and totally disabled. The occurrence of a subsequent work-related injury does not change the fact that Claimant was already permanently and totally disabled at the time of the Neck Injury. The subsequent injury may have added to Claimant's misery but did not make him *more* permanently and totally disabled or *combine* with his prior Back Injury to *result* in permanent total disability.

The basic premise underlying Employer's argument seems to be that Claimant could not have been permanently and totally disabled from the Back Injury alone because he returned to work. We reject that argument for the reasons our Western District rejected the same argument in *Archer v. City of Cameron*, 460 S.W.3d 370 (Mo.App. 2015). An employee can be permanently and totally disabled without becoming completely inactive or inert. *Id.* at 376. Claimant's good fortune to have returned to highly accommodated employment will not preclude a finding of permanent total disability because "'[t]he test is whether the claimant could compete in the open labor market.'" *Id.* (quoting *Schussler v. Treasurer of State-Custodian of Second Injury Fund*, 393 S.W.3d 90, 97 (Mo.App. 2012)). The record in this case established that Employer valued Claimant's skill set and wanted him to return to work as soon as possible, even if that work had to be highly accommodated, and he would not have otherwise been hired to do that job in the open labor market.

Points I and II are denied.  We affirm the Commission's award.

JACK A. L. GOODMAN, C.J. – OPINION AUTHOR

JEFFREY W. BATES, J. – CONCURS

GINGER K. GOOCH, J. – CONCURS