Wanae GLASCO, Appellant,

v.

**TREASURER OF the STATE of Missouri-CUSTODIAN OF the SECOND INJURY FUND, Respondent.**

### WD 80186

Missouri Court of Appeals,
Western District.

OPINION FILED: October 24, 2017

Application for Transfer to Supreme Court Denied November 16, 2017

Wanae Glasco, Independence, MO, Pro Se Appellant.

Eric Lowe, Kansas City, MO, Counsel for Respondent.

Before Division One: Cynthia L. Martin, P.J., James Edward Welsh, and Karen King Mitchell, JJ.

James Edward Welsh, Judge

Wanae Glasco appeals the Labor and Industrial Relations Commission's decision denying her claim for permanent total disability benefits from the Second Injury Fund. We affirm.

### Background

Wanae Glasco, who was born in 1956, is a licensed practical nurse (LPN) and holds a bachelor's degree in accounting. In 2000, Glasco began working as a customer service representative at Citicorp, Inc., where she worked 10 hour shifts. Glasco was discharged by her employer on August 12, 2012, as she was unable to return to work after July 2011.

Glasco has long suffered from various maladies, including recurring problems with her right knee, for which she has undergone two surgeries, and a heart condition, for which she underwent surgery in February 2007. The most troublesome of Glasco's health problems, however, is chronic and recurring low back pain, which has plagued her since the late 1990s.

Dr. Robert Drisko has treated Glasco's back problems since 1997. According to Dr. Drisko, Glasco had undergone multiple back surgeries prior to 2008.[1] In 2008, he performed another surgery on Glasco's back, this time consisting of a laminecto-

my, a fusion at the 3rd and 4th lumbar vertebrae (L3-L4), and the placement of a bone growth stimulator.

In May 2010, Dr. Jonathan Jacobs diagnosed Glasco with "failed back syndrome"[2] and recommended that she see a pain specialist and a psychiatrist. Five months later, Glasco returned to Dr. Drisko for severe pain in the left side of her back radiating down the back of her left leg and sometimes into the foot. Dr. Drisko discovered that Glasco was developing stenosis above the site of her prior surgery, a condition that he termed "transition syndrome." Dr. Drisko took her off work and ordered injections in the low back to treat her sacroiliac (SI) dysfunction.

In January 2011, Dr. Drisko noted that Glasco reported that she was suffering severe low back pain with radiation into both legs following two recent falls down flights of stairs. The doctor diagnosed post-traumatic radicular flares and provided her with another SI joint injection. Dr. Drisko again prepared short-term disability paperwork to keep Glasco off work due to her inability to work.

On February 3, 2011, Glasco reported to Dr. Drisko that she could not stand up straight, was suffering constant pain in her left leg, and was "miserable." Dr. Drisko recommended an MRI and continued to keep Glasco off work. The MRI revealed numerous spine abnormalities. When Glasco saw Dr. Drisko on February 10, 2011, she reported that she could "not do anything at all" due to the constant pain and numbness in her left leg. Given that medi-

---

1. The record does not clearly identify the exact number or nature of low back surgical procedures that Glasco had undergone prior to 2008.

2. "Failed back syndrome" refers to "the condition of patients who have not had a successful result with back surgery or spine surgery

and have experienced continued pain after surgery." *Failed Back Surgery Syndrome (FBSS)*, available at https://www.spine-health.com/treatment/back-surgery/failed-back-surgery-syndrome-fbss-what-it-and-how-avoid-pain-after-surgery (*last visited* October 17, 2017).

cation was not helpful, Dr. Drisko recommended a dorsal column stimulator for her pain.[3]

When Glasco saw Dr. Drisko for a follow-up at the end of March, she told him that she wanted to return to work as she had exhausted her short-term disability benefits. Dr. Drisko released Glasco to return to light-duty work on April 12, 2011, with restrictions of no lifting, carrying, pushing, or pulling, and the accommodation of getting up for 10 minutes every 2 hours.

Two weeks later, on April 27, 2011, Glasco fell at work and injured her left knee (the "primary" injury). Glasco reported the incident to her employer, and the employer sent her for medical treatment. Dr. David Prickett diagnosed Glasco with a left knee strain, ordered an MRI, and released her to return to work with the use of a cane if needed. Dr. Prickett referred Glasco to another doctor, who prescribed hydrocortisone injections and physical therapy.

After receiving treatment by the company's doctors for her knee injury, on July 19, 2011, Glasco returned to see Dr. Drisko about her chronic back problems. Dr. Drisko again took Glasco off work for three months due to her inability to work. On September 19, 2011, Dr. Drisko performed another back surgery consisting of a fusion at L2-L3, re-exploration of the earlier L3-L4 fusion, and placement of a bone growth stimulator.

On October 18, 2011, Dr. Drisko completed new paperwork to keep Glasco off work until December 12th due to her back pain, noting that she was unable to stand or sit for more than thirty minutes and

was significantly limited in her activities of daily living. When Dr. Drisko saw Glasco on March 7, 2012, he saw some improvement but noted that she continued to suffer significant pain, so he prescribed oxycodone. Glasco was never physically able to return to work after July 2011. She was terminated by her employer on August 12, 2012.

Glasco filed a claim for workers' compensation for injury to her left knee as a result of her fall at work. She eventually entered into a settlement agreement with Citicorp on that claim for 15% permanent partial disability, referable to her left knee. Glasco also filed a claim against the Second Injury Fund, alleging that the combination of her primary injury to her left knee and her pre-existing disabilities rendered her permanently and totally disabled.

At a hearing before an Administrative Law Judge (ALJ), the parties stipulated that Glasco was an employee of Citicorp when she sustained her knee injury; that the injury occurred while she was working in the course and scope of her employment; and that Glasco timely notified her employer and timely filed her claim. Among the issues to be resolved were: (1) whether Glasco had a compensable injury that resulted in permanent partial disability; (2) whether she suffered any pre-existing disability that was a hindrance or obstacle to employment; and (3) the liability, if any, of the Second Injury Fund.

Glasco testified about her primary injury and her pre-existing disabilities. She also introduced the expert testimony of Dr. Daniel Zimmerman and of Michael Dreil-

---

3. A "dorsal column stimulator," or spinal cord stimulator, is "an implanted electronic device used to help treat chronic pain," particularly in the case of failed back syndrome. *See* http://www.center4pain.com/services/ spinal-column-stimulation (*last visited* October 17, 2017). The record indicates that Glasco decided against this procedure because her insurance would not pay for it.

ing, a vocational rehabilitation counselor, both via deposition. The Fund introduced the deposition testimony of Dr. Drisko and of Dr. Daryl Thomas, whom Citicorp had deposed in the case. Both parties submitted a plethora of Glasco's medical records.

### Expert Testimony

Dr. Daniel Zimmerman testified, via deposition, that he conducted an independent medical examination of Glasco on July 22, 2013. He opined that she was permanently and totally disabled due to the combination of her primary injury with her pre-existing conditions. Dr. Zimmerman had not been provided Dr. Drisko's office notes to review, however, and, thus, was unaware of the complete history of Glasco's back problems, such as the fact that she had undergone multiple back surgeries prior to 2008. He also seemed to be unaware that Glasco had been on short-term disability for three months before the accident due to low back and left leg radicular pain or that she had worked only about two weeks in 2011 before the April 27 accident. After reviewing Dr. Drisko's February 10, 2011 office note, which suggested a dorsal column stimulator and related Glasco's claim that she "really [could] not do anything at all," Dr. Zimmerman agreed that the note "implied" that Glasco was severely disabled prior to April 2011.

Vocational rehabilitation counselor Michael Dreiling testified via deposition that he evaluated Glasco in November 2013. He initially opined that, due to her age, education, and the extent of her current disabilities, he did not believe that she could "realistically compete or obtain employment in the labor market." On cross-examination, Dreiling acknowledged that he was unaware that, prior to her work accident, Glasco had severe back pain that radiated into both legs and had undergone numerous back surgeries. He too was unaware

that Glasco had been on short term disability from January 2011 until two weeks before her work accident or that she had told Dr. Drisko that she "really [could] not do anything at all." Upon learning the full history of her back problems, Dreiling agreed that there was significant pre-existing disability and that, even if he assumed that the left knee was fine, Glasco would have been "virtually unemployable" outside the Citicorp job setting due to her back condition and its effect on her ability to function.

Dr. Drisko testified via deposition that Glasco had undergone six spinal surgeries. He opined that she is totally disabled due to her progressive back problems. He stated that he had taken Glasco off work in January 2011, July 2011, and after the September 2011 surgery, not because of any work injury, but rather solely due to the "transition syndrome" in her back. Dr. Drisko stated that the prevailing factor in the development of her condition was degenerative, and he believed that it was disabling as of 2010. He did not dispute that Glasco hurt her left knee at work in April 2011 and that such injury may be a contributing factor in her disability. He maintained, however, that she was totally disabled due to the pre-existing back condition alone.

Dr. Thomas testified primarily about Glasco's work-related injury to her left knee, which he rated at 10% permanent partial disability. He stated, however, that he did not believe that the April 2011 work accident caused Glasco to suffer any additional disability to her low back.

### Commission's Decision

The ALJ found the Fund liable for permanent total disability benefits based on the combination of Glasco's primary injury to the left knee and her pre-existing disabilities. On review of the ALJ's decision,

the Commission denied Glasco's claim against the Fund, finding that Dr. Zimmerman's opinions failed to ·"persuasively establish a combination effect between the primary injury and the pre-existing · disabilities." The Commission credited the opinions of Dr. Drisko and Mr. Dreiling that Glasco was permanently and totally disabled solely due to her pre-existing low back disability. The Commission concluded that

> [Glasco] is not permanently and totally disabled by reason of any combination of the effects of the primary injury and her pre-existing conditions of being. Instead, [she] is permanently and totally disabled on the basis of her nonwork-related low back disability, considered alone.

The· Commission held, therefore, that the Fund had no liability.

### Standard of Review and Statutory Framework

■ We review the decision of the Commission, not that of the ALJ. *Arciga v. AT&T*, 366 S.W.3d 91, 94 (Mo. App. 2012). Our· review is governed by article V, section 18, of the Missouri Constitution and section 287.495, RSMo.[4] Article V, section 18, provides for judicial review of the Commission's award to determine whether the decision is authorized by law and whether it is "supported by competent and substantial evidence upon the whole record." Section 287.495 dictates that we must affirm unless the Commission acted in excess of its powers, the award was procured by fraud, the facts do not support the award, or insufficient competent evidence exists to warrant the making of the award. To determine whether the award is supported

by sufficient competent and substantial evidence, we examine the evidence in the context of the whole record, viewing the· evidence objectively. *Hampton v. ·Big Boy Steel Erection*, 121 S.W.3d 220, 222-23 (Mo. banc 2003). In the absence of fraud, the Commission's factual findings are "conclusive and binding." § 287.495.1. We defer to the Commission on issues of fact, witness credibility, and the weight given to conflicting evidence. *Treasurer of State-Custodian of Second Injury Fund v. Witte*, 414 S.W.3d 455, 460 (Mo. banc 2013).

■ Section 287.220 imposes liability on the Second Injury Fund in certain cases of permanent disability where there has been previous disability. *Lewis v. Treasurer of State*, 435 S.W.3d 144, 152 (Mo. App. 2014). The Fund was created to encourage the employment of individuals who· are already disabled from a pre-existing injury, regardless of the type or cause of that injury. *Witte*, 414 S.W.3d ·at 460. To accomplish that goal, the statutory scheme limits the employer's liability, in the event of a work-related injury, to only that part of the disability that is attributable to· the work injury. *Id.* Any disability attributable to the combination of the work injury with pre-existing disabilities is compensated, if at all, by the Fund. *See id.*; § 287.220.2.[5]

■ For the Fund to be liable, a claimant must have a permanent partial disability that existed at the time of the primary injury and that was so serious "as to constitute a hindrance or obstacle to employment or re-employment." *Lawrence v. Treasurer of State-Custodian of 2nd*

---

4. Statutory references are to the Revised Statutes of Missouri (RSMo) 2000, as updated by the 2012 Cumulative Supplement.

5. In 2013, the Legislature amended section 287.220 to change eligibility requirements for

injuries occurring after January 1, 2014. The new requirements are in subsection .3; subsection .2 applies to injuries (such as the one in this case) which occurred before that date. *Witte*, 414 S.W.3d at 461 n. 3.

*Injury Fund*, 470 S.W.3d 6, 13 (Mo. App. 2015). If the claimant establishes either (1) that the pre-existing partial disability combined with a disability from a subsequent injury to create a permanent total disability, or (2) that the disabilities combined result in a greater disability than that which would have resulted from the last injury alone, then the Fund is liable for the portion of disability attributable to the pre-existing condition. *Id.*

Glasco sought recovery for permanent *total disability* benefits under the first set of circumstances.[6] Section 287.020.6 defines "total disability" as the "inability to return to any employment and not merely [an] inability to return to the employment in which the employee was engaged at the time of the accident." *Carkeek v. Treasurer of State-Custodian of Second Injury Fund*, 352 S.W.3d 604, 608 (Mo. App. 2011). "The critical question is whether, in the ordinary course of business, any employer reasonably would be expected to hire the injured worker, given his present physical condition." *Id.* The Fund is liable for *permanent total disability* benefits only when the claimant proves that she is permanently and totally disabled *due to the combination of* the

6. As the Commission noted in its Final Award Denying Compensation, Glasco "did not advance any alternative argument that she may be entitled to enhanced permanent partial disability benefits from the [Fund]."

7. Section 287.220.2 provides, in relevant part:

If the previous disability or disabilities, whether from compensable injury or otherwise, and the last injury together result in total and permanent disability, ... the employer at the time of the last injury shall be liable only for the disability resulting from the last injury considered alone and of itself; except that if the compensation for which the employer at the time of the last injury is liable is less than the compensation provided in this chapter for permanent total disability, then in addition to the com-

primary injury and a pre-existing partial disability. *Lawrence*, 470 S.W.3d at 14; § 287.220.2.[7] The Fund is not liable for any progression of a claimant's pre-existing disability that is not caused by the primary injury. *Lewis*, 435 S.W.3d at 162.

## Discussion

In her *first point relied on*,[8] Glasco contends that:

> The Commission erred and abused its discretion in ordering that [Glasco's] claim against the Second Injury Fund is denied as [she] failed to demonstrate that the primary injury combined with her pre-existing conditions of ill-being to result in permanent total disability because the parties stipulated to overwhelming uncontested facts that relieved [Glasco] of believing that any additional evidence was needed to prove permanent total disability and the Commission thereby acted without or in excess of its power by reversing the ALJ.

The gist of Glasco's argument related to this point is that, "because of the parties' stipulations[,] [t]he Commission wrongly concluded [that she] failed to produce suf-

pensation for which the employer is liable and after the completion of payment of the compensation by the employer, the employee shall be paid the remainder of the compensation that would be due for permanent total disability under section 287.200 out of [the Fund].

8. We note that neither of Glasco's "Points Relied On" comply with the directives of Rule 84.04(d), and her "Argument" fails to comply with 84.04(e), in that it is inadequate to the point of being nearly useless. These rule violations seriously hinder our review, and we would be justified in dismissing the appeal on that basis. *See Bailey v. Phelps Cty. Reg'l Med. Ctr.*, 328 S.W.3d 770, 772-73 (Mo. App. 2010). Nevertheless, we exercise our discretion to review Glasco's claims to the extent that we can understand them. *See id.* at 773.

ficient evidence to show [that] her pre-existing disability synergistically combined with her current disability." [9] Glasco contends that, if she failed to produce sufficient competent evidence to prove "the synergistic combination of her disabilities," it was due to "her belief that the stipulation relieved her of any necessity to do so."

We note, first, that the "synergistic" effect to which Glasco refers comes into play when a claimant is seeking "permanent partial disability" benefits under section 287.220. *Winingear v. Treasurer of State-Custodian 2nd Injury Fund*, 474 S.W.3d 203, 207 (Mo. App. 2015). To obtain such benefits, "the claimant must establish that the present compensable injury and his pre-existing permanent partial disability combined to cause a greater degree of disability than the simple sum of the disabilities viewed independently." *Id.* This is referred to as the "synergistic effect." *Id.* (quoting *Pierson v. Treasurer of State*, 126 S.W.3d 386, 388-89 (Mo. banc 2004)). That calculation is relevant only if the result is a ***permanent partial disability***.[10] *Lawrence*, 470 S.W.3d at 13 n.7. Here, as noted, the issue was ***permanent total disability***.

In any event, Glasco's core argument—*i.e.*, that the stipulations supplied the needed evidence—lacks any merit. These are the stipulations to which the parties agreed:

1. That Citicorp, Inc. was an employer operating under and subject to the provisions of Missouri Workers' Compensation Law on or about April 27, 2011 and was fully insured by Constitution State Services Company;

2. That Ms. Glasco was its employee and working subject to the law in Kansas City, Jackson County, Missouri;

3. That Employee sustained an accident arising out of and in the course and scope of her employment;

4. That Employee notified the Employer of her injuries as required by law and her claim was filed within the time allowed by law;

5. That Employee's average weekly wage was disputed and the evidence including her testimony and the settlement stipulation with the employer is sufficient to determine that Ms. Glasco's compensation rate is $437.29 for temporary total disability and $418.58 for permanent partial disability compensation;

6. That employer has not paid temporary total disability compensation and has paid medical care costing $2,725.12; and

7. That Employer and Employee settled the primary claim for 15% left knee at the 160 week level in the amount of $10,045.92.

As outlined by the ALJ, these are the issues that were to be resolved at the hearing:

1. Whether Ms. Glasco has a compensable injury that resulted in permanent partial disability;

---

9. Glasco also argues that "[t]he Commission erred in failing to consider all of [her] pre-existing disabilities other than her back." This claim is not encompassed by her point relied on and, thus, need not be considered. *See Archer v. City of Cameron*, 460 S.W.3d 370, 377 n.1 (Mo. App. 2015). In any event, in light of the Commission's decision that she was totally disabled by her pre-existing back disability *alone*, consideration of any additional pre-existing disabilities would not have aided her in any way.

10. The Commission noted that, because Glasco did not seek permanent partial disability benefits from the Fund, her "experts [did not] consider or describe any synergistic interaction between the left knee primary injury and, for example, employee's pre-existing right knee disability."

2. Whether Ms. Glasco suffered any pre-existing disability that was a hindrance or obstacle to her employment or to her reemployment should she become unemployed;

3. Whether the Second Injury Fund is liable to Ms. Glasco for any disability compensation;

4. What is Ms. Glasco's average weekly wage and benefit rate.

The parties agreed that these were the issues to be decided. These issues (as well as the above-listed stipulations, themselves) make it clear that there were no stipulations as to either the extent of Glasco's disability or the Fund's liability on her claim. Nor was there any stipulation that Glasco was relieved of her burden of proof on those specific issues. *See* § 287.808. This claim (to the extent that we understand it) is wholly without merit.

In her ***second point relied on***, Glasco claims that:

> The Commission's final award is erroneous by denying compensation in finding that [Glasco] failed to demonstrate that the primary injury combined with pre-existing conditions of ill-being to result in permanent total disability because it acted without or in excess of its powers in that [there] was stipulated and significant and competent evidence adduced on the record to warrant the award of compensation pursuant to section 287.020.6 RSMo.

Glasco's argument related to this point is that the Commission committed error in denying her claim against the Fund because the evidence was "undisputed" that her primary injury resulted in permanent partial disability, and "[t]here is no dispute that [she] suffered pre-existing injuries that are compensable," in that they were "a hindrance or obstacle to her employment or reemployment."

Both of Glasco's points (as well as her arguments) are difficult to understand. It appears, however, that she is asserting in both points that the Commission erred in denying her claim against the Fund (1) because the Commission "acted without or in excess of its powers" in reversing the ALJ's decision, and (2) because there was "sufficient competent evidence in the record" to warrant granting her claim against the Fund.

 Any claim that the Commission "acted without or in excess of its powers" in reversing the ALJ's decision "misconceives" the proper standard of review. *See Molder v. Mo. State Treasurer,* 342 S.W.3d 406, 410 (Mo. App. 2011). Where the Commission reviews an ALJ's decision, it essentially considers the matter *de novo. Id.* (citing § 287.480.1). On judicial review, this Court "reviews the findings of the Commission, not those of the ALJ." *Id.* Thus, we need determine only whether there was "substantial evidence supporting *the decision reached by the Commission,* even if the evidence would have *also* supported the opposite result." *Id.* at 411.

 Glasco's claims suggest that she misunderstands the Commission's reason for denying Fund liability. The Commission denied her claim because she failed to establish that her primary injury combined with her pre-existing disability to result in permanent total disability ***because*** she was already permanently and totally disabled as a result of her pre-existing disability ***alone***.

In *Schussler v. Treasurer of State-Custodian of Second Injury Fund,* this Court also affirmed the Commission's denial of Fund liability based on its determination that the claimant was permanently and totally disabled ***before*** her primary work-related injury. 393 S.W.3d 90, 92 (Mo. App. 2012). The claimant's medical expert found

that she was totally disabled due to the combination of her primary injury (carpal tunnel) and her pre-existing conditions. *Id.* at 93-94. But her vocational expert opined that she was not employable on the open labor market, "even if we take out" the primary injury to her hands. *Id.* at 94. Although Schussler (like Glasco) was working at the time of her primary injury, the vocational expert pointed out that her prior jobs had been "heavily accommodated." [11] *Id.* at 95. The Commission determined that, because Schussler suffered from a "multitude of physical problems" that left her unable to compete in the open labor market before her primary injury, she was permanently and totally disabled before the primary injury. *Id.* Thus, the Fund was not liable for any compensation. *Id.*

■ Here, too, we find that the evidence supported the Commission's determination that Glasco was permanently totally disabled by her back problems before the primary injury. As noted in *Schussler*, questions of "employability" and of *when* the claimant became permanently totally disabled are issues of fact within the province of the Commission. *Id.* at 96. The Commission is free to believe or disbelieve any evidence, and absent fraud, its factual findings are "conclusive and binding." *Id.*; § 287.495.1. Thus, we defer to the Commission "on issues of fact, the credibility of the witnesses, and the weight given to conflicting evidence." *Witte*, 414 S.W.3d at 460. This deference applies equally to the Commission's evaluation of expert medical testimony. *Treasurer of the State of Mo. v. Majors*, 506 S.W.3d 348, 352 (Mo. App. 2016).

Here, the Commission reviewed the evidence and found that Dr. Zimmerman's opinion

> lack[ed] any persuasive value with regard to the nature and extent of any permanent disability referable to the primary injury versus employee's pre-existing conditions of ill-being. Nor were we able to credit Dr. Zimmerman as persuasively establishing a combination effect between the primary injury and employee's pre-existing conditions of ill-being.

The Commission noted that Dr. Zimmerman's opinion "appears to have resulted, in part, from employee's failure to provide him with a complete set of records from Dr. Drisko, or an accurate history with regard to her pre-existing low back disability, or even an accurate history with regard to the April 2011 accident." The Commission explained:

> Where a medical expert relies upon a demonstrably incomplete and/or incorrect history of an employee's medical treatment in connection with pre-existing conditions of ill-being[,] especially where that treatment involves multiple lumbar spine surgeries and a lengthy period of short-term disability[,] we simply cannot credit their ultimate opinions with regard to the nature and extent or combination of any disability referable

---

11. We explained in *Schussler* that "the Commission is not prevented from finding that a claimant is permanently and totally disabled simply because he or she holds limited, sporadic and/or highly accommodated employment." 393 S.W.3d at 97. To hold otherwise, we observed, "would penalize attempts by the disabled to self-support." *Id.* This concept is recognized in numerous cases. *See, e.g., Archer v. City of Cameron*, 460 S.W.3d 370, 372-73 (Mo. App. 2015); *Brashers v. Treasurer of State as Custodian of Second Injury Fund*, 442 S.W.3d 152, 162-63 (Mo. App. 2014); *Molder*, 342 S.W.3d at 411-13; *Pavia v. Smitty's Supermarket*, 118 S.W.3d 228, 237-39 (Mo. App. 2003). As noted in *Brashers*, "an employer might choose to permit an existing employee to return to work with limitations that a reasonable employer would not accept in a new hire in order to reward past loyalty, to avoid training costs, etc." 442 S.W.3d at 163, n. 7.

to a claimed work injury versus such pre-existing conditions.

The Commission further noted that, when Mr. Dreiling was informed of Glasco's complete history, he conceded that, even if she had suffered no knee injury in the April 2011 accident, she would be unable to compete for work in the open labor market based on her pre-existing back condition. The Commission found that opinion to be credible. The Commission also credited Dr. Drisko's opinion that Glasco's total disability is due to her pre-existing back condition alone, unrelated to the work accident. The Commission concluded that, because it could not "reasonably credit" the opinions of experts who were provided "demonstrably—and *critically*—incorrect information," it was "constrained to deny the claim."

Glasco identifies no reversible error here. The Commission was entitled to credit the opinions of Dr. Drisko and Mr. Dreiling over that of Dr. Zimmerman. It also was free to reject the opinion of Dr. Zimmerman as not credible given that his opinion was formulated without all of the necessary and available facts. Deferring to the Commission on its factual findings, as we must, we find that "the Commission reasonably could have made its findings and reached its result based upon all of the evidence before it," even if we might have reached a different conclusion. *See Brashers*, 442 S.W.3d at 164. Consequently, we deny both points on appeal.

### Conclusion

Based on the foregoing, we affirm the Commission's decision denying Fund liability.

All concur.