IN THE MISSOURI COURT OF APPEALS
 WESTERN DISTRICT

 WILLIAM WILSON, )
 )
 Appellant, )
 v. )
 WD84420
 )
 )
 OPINION FILED:
 TREASURER OF THE STATE OF )
 September 28, 2021
 MISSOURI - CUSTODIAN OF THE )
 SECOND INJURY FUND, )
 )
 Respondent. )

 Appeal from the Labor and Industrial Relations Commission

 Before Division Three: Edward R. Ardini, Jr., Presiding Judge, and
 Mark D. Pfeiffer and W. Douglas Thomson, Judges

 Mr. William Wilson (“Employee”) appeals from the final award (“Final Award”) of the

Labor and Industrial Relations Commission (“Commission”) denying his workers’ compensation

claim, which sought permanent total disability benefits from the Second Injury Fund (“SIF”). The

Commission concluded that SIF was not liable because Employee failed to sustain the burden of

proof set out in section 287.220.3(2): that his permanent total disability (“PTD”) resulted solely

from one qualifying preexisting disability in combination with the disability resulting from the

primary injury.1 In Treasurer as Custodian of Second Injury Fund v. Parker, 622 S.W.3d 178

 1
 All statutory references are to the REVISED STATUTES OF MISSOURI 2016 as supplemented through
November 8, 2017, the date of Wilson’s compensable workplace injury, unless otherwise indicated.
(Mo. banc 2021), the Missouri Supreme Court rejected SIF’s interpretation of section 287.220.3

that only one qualifying disability may be considered in combination with the primary injury to

determine PTD liability against SIF. Because the Commission erroneously interpreted and applied

the law, we reverse the Commission’s Final Award and remand with instructions to the

Commission to enter a final award in favor of Employee and against SIF for PTD benefits.

 Factual and Procedural Background2

 Employee (born 8/19/63) has a ninth-grade education and suffers from dyslexia. Employee

was employed as a truck driver for Jack’s Truck Rental (“Employer”) at the time of his primary

injury in 2017. His duties with Employer consisted of driving a trailer truck in Jefferson City,

Missouri. Each delivery trip lasted approximately fifteen minutes. Employee was required to

climb in and out of the trailer truck, drive to a designated destination, and open and close the door

on the back of the trailer truck.

 The Last (i.e., Primary) Injury

 On November 8, 2017, as Employee was opening the doors on a trailer truck to unload

pallets of cardboard boxes, the top pallet of two stacked pallets fell on him, hitting him first on the

right shoulder, knocking him down to the ground, and then falling on his right foot. Employee

sustained four broken bones in his right foot requiring surgical open reduction and internal fixation.

Unfortunately, the right foot did not heal as anticipated and Employee suffers from severe pain,

numbness in his toes, and he uses a brace and a cane when he is outside of his home.

 Employee and Employer entered into a stipulation for compromise lump-sum settlement

of the primary injury claim based upon a permanent disability of 42.5% of the right ankle (150

weeks of permanent partial disability).

 2
 In reviewing the Commission’s decision, we view the evidence objectively and not in the light most
favorable to the award. Hampton v. Big Boy Steel Erection, 121 S.W.3d 220, 223 (Mo. banc 2003).

 2
 Preexisting Medical Conditions

 Employee’s history of work-related and non-work-related accidents, injuries, and diseases

are as follows:

Right knee
1979 surgery to repair ligaments in right knee injured while playing
 football;
1987 reconstruction surgery on right knee injured after falling sixteen feet
 off of a second-story roof while hanging a long piece of guttering
 for his then employer, Capital City Home Maintenance;
1988 reconstruction surgery on right knee due to continued weakness and
 swelling;
2011 right knee replacement due to continued pain and instability;

Left knee
1992 surgery to clean out cartilage and ligaments in left knee after he
 “blew out” left knee while pouring concrete for Hagemeyer
 Concrete, his employer at that time;
1994 left knee surgery due to ongoing problems;
2011 (October) left knee replacement;
2011 (November) left knee surgery to clean out staph infection;
2011 (December) left knee surgery;
2012 (January) remove prosthetic in left knee;
2012 (March) second left knee replacement along with skin grafting;
2012 (November) third left knee replacement due to bacterial infection;
2012 (December) muscle transplant surgery in left knee;

Cardiovascular
1999 diagnosed with coronary artery disease;
between 2000 and 2017 two heart attacks and eight stent placements.

 Permanent Total Disability

 The undisputed and only medical expert to testify as to the cause of Employee’s PTD was

Dr. David Volarich. Both the Administrative Law Judge (“ALJ”) and the Commission expressly

noted that Dr. Volarich’s testimony was credible.3

 3
 “‘The question of causation is one for medical testimony, without which a finding for claimant would be
based upon mere conjecture and speculation and not on substantial evidence.’” Van Winkle v. Lewellens Pro.
Cleaning, 258 S.W.3d 889, 897 (Mo. App. W.D. 2008) (quoting Elliott v. Kansas City, Mo., Sch. Dist., 71 S.W.3d
652, 658 (Mo. App. W.D. 2002)).

 3
 Dr. Volarich testified that Employee’s primary injury, the right foot injury, combined with

his preexisting injuries to his right knee, his left knee, and his cardiovascular condition rendered

Employee permanently and totally disabled.

 ALJ’s and Commission’s Conclusion4

 Wilson’s claim against SIF was heard before the ALJ on June 23, 2020. Wilson gave

in-person testimony; no witnesses were called by SIF. Dr. David Volarich was the only medical

expert to testify. On July 21, 2020, the ALJ issued an Award denying Employee’s claim for PTD

benefits against SIF.

 Finding that Dr. Volarich testified credibly, the ALJ concluded that Employee

demonstrated that his preexisting disability from the right knee injury was 35 percent of the knee

(56 weeks of permanent partial disability), his preexisting disability from the left knee was

55 percent of the knee (88 weeks of permanent partial disability), and his preexisting disability

from his cardiovascular condition was 35 percent to the body as a whole (140 weeks of permanent

partial disability).

 While the ALJ concluded that Employee was permanently and totally disabled as a result

of the primary injury combined with the preexisting left knee injury, the preexisting right knee

injury, and the preexisting cardiovascular condition, the ALJ denied PTD benefits against SIF,

concluding that Employee did not meet the requirements of section 287.220.3(2) because

Employee failed to sustain his burden of proof that his PTD was the result of his primary injury in

combination with a single preexisting disability that met the 50-week threshold requirement set

out in section 287.220.3(2).

 4
 This Court reviews the findings and award of the Commission, not the ALJ. Austin v. AM Mech. Servs.,
604 S.W.3d 665 (Mo. App. W.D. 2020). However, where the Commission affirms the ALJ’s Award and incorporates
it by reference into the Commission’s Final Award, as is the case here, we review for error the ALJ’s findings and
conclusions as adopted by the Commission. Hayes v. Ginger C, LLC, 582 S.W.3d 140, 146 (Mo. App. W.D. 2019).

 4
 On July 24, 2020, Employee filed a Motion to Modify Award with the ALJ which was

denied on July 28, 2020. Thereafter, Employee filed a timely administrative appeal to the

Commission and, on March 19, 2021, the Commission affirmed and adopted the ALJ’s Award in

its Final Award Denying Compensation.5

 Employee timely appealed.

 Standard of Review

 Our review of the Commission’s decision is governed by article V, section 18, of the

Missouri Constitution and section 287.495.1. Article V, section 18, provides for judicial review

of the Commission’s Final Award to determine whether the decision is authorized by law and

whether it is “supported by competent and substantial evidence upon the whole record.” Under

section 287.495.1, we must affirm unless the Commission acted without or in excess of its powers,

the award was procured by fraud, the facts found by the Commission do not support the award, or

there was insufficient competent evidence in the record to warrant the making of the award.

Although we defer to the Commission’s factual findings, including those findings about the

credibility of witnesses, we review de novo the Commission’s determinations of law. Hayes v.

Ginger C, LLC, 582 S.W.3d 140, 146-47 (Mo. App. W.D. 2019). “Decisions involving statutory

interpretation . . . are reviewed de novo.” White v. ConAgra Packaged Foods, LLC, 535 S.W.3d

336, 338 (Mo. banc 2017).

 5
 One member of the Commission filed a dissenting opinion stating that “the administrative law judge in this
case improperly applied § 287.220.3,” in that “[e]ach of employee’s preexisting conditions satisfy § 287.220.3(2)(a),
and meet the 50-week threshold.” The dissent also stated, “Dr. Volarich, the only medical expert to testify in
employee’s case, opined that employee’s [primary] injury combined with his preexisting injuries to his right knee, left
knee and his cardiovascular system to render him permanently and totally disabled.” The dissenting member of the
Commission concluded that Employee is entitled to have all of his qualifying preexisting disabilities considered when
evaluating SIF responsibility for PTD benefits. For reasons explained herein, we agree.

 5
 Analysis

 “Section 287.220 imposes liability on the Second Injury Fund in certain cases of permanent

disability where there has been previous disability.” Glasco v. Treasurer of State-Custodian of

Second Injury Fund, 534 S.W.3d 391, 397 (Mo. App. W.D. 2017). “The Fund was created to

encourage the employment of individuals who are already disabled from a pre-existing injury,

regardless of the type or cause of that injury.” Id. “To accomplish that goal, the statutory scheme

limits the employer’s liability, in the event of a work-related injury, to only that part of the

disability that is attributable to the work injury.” Id. “Any disability attributable to the

combination of the work injury with pre-existing disabilities is compensated, if at all, by the Fund.”

Id.

 Subsection 3 of section 287.220 applies to all PTD claims against SIF for injuries that

occurred after January 1, 2014. Employee’s primary injury that precipitated his PTD claim against

SIF occurred on November 8, 2017; therefore, the Commission correctly applied section 287.220.3

in Employee’s case. Under subsection 3, claims for PTD benefits against the Fund are

compensable only when two conditions are met. First, an employee must have a “medically

documented preexisting disability equaling a minimum of fifty weeks of permanent partial

disability compensation,” (“PPD”) which meets one of the following criteria:

 (i) A direct result of active military duty in any branch of the United States Armed Forces;
 or

 (ii) A direct result of a compensable injury as defined in section 287.020; or

 (iii) Not a compensable injury, but such preexisting disability directly and significantly
 aggravates or accelerates the subsequent work-related injury and shall not include unrelated
 preexisting injuries or conditions that do not aggravate or accelerate the subsequent
 work-related injury; or

 (iv) A preexisting permanent partial disability of an extremity, loss of eyesight in one eye,
 or loss of hearing in one ear, when there is a subsequent compensable work-related injury

 6
 as set forth in subparagraph b of the opposite extremity, loss of eyesight in the other eye,
 or loss of hearing in the other ear[.]

§ 287.220.3(2)(a)a(i)-(iv). Second, the employee must show that he or she “thereafter sustains a

subsequent compensable work-related injury that, when combined with the preexisting

disability . . . results in a permanent total disability.” § 287.220.3(2)(a)b.

 Section 287.220.3(2)(a)b provides that an employee must show that he or she is

permanently and totally disabled as a result of the combination of the primary injury and “the

preexisting disability, as set forth in items (i), (ii), (iii), or (iv) of subparagraph a. of this

paragraph.” (Emphasis added.) The Supreme Court of Missouri clarified in Parker, that

“[a]lthough section 287.220.3(2)[(a)]b refers to the preexisting disability in the singular form—

‘when combined with the preexisting disability’—section 1.030 instructs that the singular form

should be interpreted to include the plural form. Therefore, section 287.220.3(2)[(a)]b should be

read to include ‘when combined with the preexisting disabilities.’” Parker, 622 S.W.3d at 182

(footnote omitted). In determining which preexisting conditions should be considered under

subparagraph b, the Supreme Court explained that:

 By specifying that the preexisting disability must qualify under one of the four
 eligibility criteria in the first condition, the legislature excluded disabilities that are
 not the primary injury and that do not qualify under the first condition from being
 considered when determining if the claimant meets the second condition.
 Therefore, an employee satisfies the second condition by showing the primary
 injury results in PTD when combined with all preexisting disabilities that qualify
 under one of the four eligibility criteria listed in the first condition.

Id.

 The ALJ found, based on Dr. Volarich’s testimony, that Employee’s PPD to his right foot

was 42.5% of the right foot or 150 weeks PPD from the November 8, 2017 injury; 35% or 56

weeks PPD at the right knee from the prior right knee injury of August 5, 1987; 55% or 88 weeks

PPD at the left knee from the August 4, 1992 injury; and 35% or 140 weeks PPD of the body from

 7
his preexisting cardiovascular condition. The ALJ also found that Employee’s preexisting

cardiovascular condition aggravated and accelerated his November 8, 2017 injury to the right foot

and found credible Dr. Volarich’s opinion that Employee’s right foot did not heal as anticipated in

part as a result of diminished blood flow stemming from his cardiovascular condition. Each of

Employee’s preexisting conditions satisfies section 287.220.3(2)(a)a and meets the 50-week PPD

threshold. Consequently, as Employee argues and as SIF concedes, we conclude that the

Commission erroneously declared and applied section 287.220.3 when it found that Employee

“failed to sustain his burden of proof that he is permanently and totally disabled as the result of his

November 8, 2017 injury to his right foot in combination with a single preexisting disability that

meets the 50-week requirement set out in section 287.220.3(2).”

 However, the parties disagree as to the appropriate remedy. SIF argues that Employee did

not meet his burden of persuasion and that the Commission has not made findings upon which to

support an award of benefits; therefore, this Court should remand to the Commission for additional

findings.6 On the other hand, Employee argues that the Commission has already made all the

findings necessary for an award to be entered against SIF.

 Section 287.490.1 authorizes this Court to modify, reverse, remand for rehearing, or set

aside an award. It is the Commission’s role to apply the statutory scheme to the facts it finds in

the case and, then, to make or deny an award based on those findings and conclusions. Parker,

622 S.W.3d at 183. The Commission performed its fact-finding and law-applying role. As the

Commission noted, Dr. Volarich was the only medical expert to testify in Wilson’s case, and there

 6
 Notably, SIF does not identify what additional findings are necessary, but suggests that this is the remedy
reflected in Treasurer as Custodian of Second Injury Fund v. Parker, 622 S.W.3d 178, 184 (Mo. banc 2021). The
difference in Parker is that the Commission had erroneously applied the wrong subsection of section 287.220 for
evaluating SIF liability—applying subsection 287.220.2 instead of 287.220.3. Id. at 180. The reason for remand in
Parker was so that the Commission could consider SIF liability under the appropriate subsection of section 287.220.
Id. at 184. Here, however, SIF concedes that the Commission did, in fact, apply the correct subsection of
section 287.220; hence, there is no similar procedural posture as Parker necessitating a remand on that basis.

 8
was no conflicting medical evidence presented. The Commission concluded that “Dr. Volarich

testified credibly to the permanent and total disability resulting from the combination of the 2017

right foot injury with the 1992 left knee, 1987 right knee, and preexisting cardiovascular

condition.” The Commission’s factual determinations, based primarily upon Dr. Volarich’s

testimony, required an award of benefits; the Commission’s denial of benefits was solely an error

in interpreting and applying the law. Under Parker, Employee met his burden to establish that he

is permanently and totally disabled from the combination of his November 8, 2017 primary injury

and all of his qualifying preexisting disabilities. Considering the voluminous factual record

supporting an award, no additional factual findings are required before applying the correct legal

standard to the undisputed facts in the record and entering an award against SIF.

 Point granted.

 Conclusion

 The Commission’s final award is reversed and the cause is remanded with instructions to

the Commission to enter a final award of PTD benefits in favor of Employee and against SIF.

 /s/Mark D. Pfeiffer
 Mark D. Pfeiffer, Judge

Edward R. Ardini, Jr., Presiding Judge, and W. Douglas Thomson, Judge, concur.

 9