

# SUPREME COURT OF MISSOURI
## en banc

JAMES ECKARDT, )
         )
         Appellant/Cross-Respondent, )
         )
v. )     No. SC100784
         )
TREASURER OF MISSOURI AS )
CUSTODIAN OF THE SECOND )
INJURY FUND, )
         )
         Respondent/Cross-Appellant. )

*Opinion issued April 29, 2025*

### APPEAL FROM THE LABOR AND INDUSTRIAL RELATIONS COMMISSION

James Eckardt appeals the decision of the Labor and Industrial Relations Commission (the Commission) denying permanent total disability (PTD) benefits. Eckardt argues the Commission misconstrued the evidence by finding his expert relied on a non-qualifying right shoulder injury in determining he was permanently and totally disabled. He alternatively argues a load factor should have been applied to his right shoulder injury and, when such load factor is applied, the injury qualifies under section 287.220.3(2)(a)a.[1] The Court affirms the Commission's denial of PTD benefits.

---

[1] All statutory references are to RSMo 2016 unless otherwise noted.

**Factual and Procedural Background**

Eckardt began working as an aircraft mechanic in 1976. His work duties included changing equipment parts, large engines, and brakes, which entailed frequent walking, standing, climbing, and crawling, both indoors and outdoors. His job required excellent manual dexterity. Eckardt used assorted tools in tight and awkward spaces and lifted objects up to 100 pounds. Throughout the course of his employment, spanning more than 40 years, he sustained seven work-related injuries.

Eckardt's first injury was in March 1998, when he stepped in a hole near an airplane gate and injured his right knee. This incident resulted in two knee surgeries, physical therapy, and, eventually, a right knee replacement in 2014. Eckardt returned to work after the injury but found it hard to kneel and walk on his right knee.

In September 2001, Eckardt sustained a second work-related injury when he fell from a ladder and injured his left knee. This incident resulted in knee surgery and physical therapy. In 2014, Eckardt underwent a left knee replacement. Again, he returned to work, but the physical demands of his job (i.e., going up and down jetway stairs, walking from gate to gate, and working while kneeling on the ground to change brakes and tires) exacerbated his left knee problems.

Eckardt's third work-related injury occurred in January 2010, when he slipped on ice and fell on his left arm, causing tears in his left shoulder and bicep and a fracture to his left wrist. Eckardt underwent surgeries on the left wrist and shoulder in February 2010 but experienced post-surgery complications and persistent pain in the left shoulder. He had a second left shoulder surgery in January 2011 but continued to have pain, weakness, and

2

numbness in his left shoulder and wrist. Eckardt went back to work, though his left shoulder condition made it more difficult to use tools and pick up objects at work.

In November 2012, Eckardt incurred another work-related injury when he misjudged a step while exiting an airplane. He caught the door handle to maintain his balance, injuring his right shoulder. Eckardt was diagnosed with a right shoulder impingement and was referred to physical therapy. He returned to work despite it being more difficult to lift objects due to the loss of some range of motion in his right shoulder.

In January 2013, Eckardt was diagnosed with work-related carpal tunnel syndrome in the left and right wrists. He had surgery on the right wrist in February 2013 and the left wrist in March 2013. Eckardt continued to work despite having "no feeling" in his hands and frequently dropping items as a result.

Eckardt sustained his final work-related injury, which this Court refers to as the primary injury,[2] in October 2015. He was struck by an open door of a moving van, resulting in injury to his cervical spine, right shoulder, and right wrist. Eckardt underwent a spinal fusion surgery in July 2016 and reached maximum medical improvement of the primary injury in January 2017. Eckardt retired in February 2017 because he could no longer physically perform his job.

Eckardt sought disability benefits from the Treasurer of the State of Missouri as Custodian of the Second Injury Fund (the Fund). The administrative law judge (ALJ) in

---

[2] The final "subsequent compensable work-related injury" referred to in section 287.220.3(2)(a)b "is often referred to as the 'primary injury.'" *Treasurer of Mo. v. Parker*, 622 S.W.3d 178, 181 (Mo. banc 2021).

the Division of Workers' Compensation assigned the following permanent partial disability (PPD) amounts to Eckardt's preexisting work injuries and diseases:

(1) Right knee – 80 weeks PPD

(2) Left knee – 80 weeks PPD

(3) Left shoulder – 92.8 weeks PPD

(4) Left wrist – 78.75 weeks PPD (due to injury and carpal tunnel syndrome)

(5) Right wrist – 70 weeks PPD (due to only carpal tunnel syndrome)

(6) Right shoulder – 46.4 weeks PPD

The ALJ considered three medical reports from a doctor who had examined Eckardt in 2011, 2014, and 2018, respectively. Relevant here, the 2018 report stated Eckardt was permanently and totally disabled due to his primary injury in combination with all six of his preexisting disabilities. The ALJ acknowledged the right shoulder injury did not reach the statutory threshold of 50 weeks PPD to be considered in the PTD benefits determination but found the doctor's reliance on that injury "not significant when considering all of [Eckardt's] qualifying preexisting injuries." The ALJ then determined Eckardt was permanently and totally disabled and found the Fund liable for PTD benefits.

The Fund appealed to the Commission. The Fund argued the ALJ erred in considering the carpal tunnel syndrome in Eckardt's left and right wrists, as occupational diseases such as carpal tunnel syndrome do not qualify as preexisting injuries under category (ii). The Fund further argued the ALJ erred in awarding PTD benefits because the doctor improperly relied on Eckardt's non-qualifying right shoulder injury and carpal tunnel syndrome in his medical causation analysis.

4

The Commission reversed the ALJ's award and denied Eckardt's claim, finding he failed to meet his burden to show he was entitled to PTD benefits. The Commission held the doctor improperly relied on Eckardt's non-qualifying right shoulder injury in his medical causation analysis, which constituted the only medical causation evidence in Eckardt's case. Accordingly, there was "no credible or persuasive evidence in the record that [Eckardt] is [permanently and totally disabled] due to the primary injury in combination with *only* preexisting injuries that qualify under [section] 287.220.3." The Commission further held occupational diseases qualify as preexisting injuries under category (ii) such that Eckardt's carpal tunnel syndrome was appropriately considered in the PTD benefits analysis.

Eckardt appeals, arguing the Commission misconstrued the evidence by finding the doctor relied on the non-qualifying right shoulder injury in his PTD determination. Eckardt alternatively argues a load factor should apply to enhance the amount of PPD attributed to his right shoulder injury, pushing it over the 50-week statutory threshold to qualify for consideration.[3] The Court addresses these arguments in reverse order.

---

[3] The Fund also asserts a cross-appeal alleging the Commission erred in determining occupational diseases qualify as preexisting injuries under category (ii) and that Eckardt's carpal tunnel syndrome was appropriately considered in his PTD benefits analysis. The Court need not reach this issue to resolve this appeal. Because there was no evidence that Eckardt was permanently and totally disabled absent consideration of the nonqualifying right shoulder injury, the Court affirms the Commission's denial of PTD benefits without the necessity of reaching the issue raised in the Fund's cross-appeal.

**Standard of Review**

"This Court reviews the Commission's findings to determine if they are supported by competent and substantial evidence upon the whole record, but … questions of law are reviewed *de novo*." *Parker*, 622 S.W.3d at 180-81 (quotations omitted). The appellate court "shall review only questions of law and may modify, reverse, remand for rehearing, or set aside the award" only upon the following grounds:

(1) That the commission acted without or in excess of its powers;

(2) That the award was procured by fraud;

(3) That the facts found by the commission do not support the award;

(4) That there was not sufficient competent evidence in the record to warrant the making of the award.

§ 287.495.1(1)-(4). Further, this Court must strictly construe the provisions of the workers' compensation statutes. § 287.800.1.

**Analysis**

The claimant bears the burden of showing he is entitled to PTD benefits. *Annayeva v. SAB of TSD of City of St. Louis*, 597 S.W.3d 196, 199 (Mo. banc 2020). Pursuant to section 287.220.3, a claimant "must meet two conditions to make a compensable PTD claim against the Fund." *Klecka v. Treasurer of Mo.*, 644 S.W.3d 562, 566 (Mo. banc 2022).

First, the claimant must have at least one qualifying preexisting disability, which must be medically documented, equal at least 50 weeks of PPD, and fall into one of the four listed categories in section 287.220.3(2)(a)a. *Id.* Of those four categories, the parties

6

do not dispute category (ii) applies here. Category (ii) requires the preexisting disability to be a "direct result of a compensable injury as defined in section 287.020[.]" § 287.220.3(2)(a)a(ii).

Second, the claimant must show he "thereafter sustains a subsequent compensable work-related injury [the primary injury] that, when combined with the preexisting disability … results in a [PTD.]" § 287.220.3(2)(a)b. To satisfy the second condition, the claimant must show "the primary injury results in PTD when combined with all preexisting disabilities *that qualify*" under the first condition. *Parker*, 622 S.W.3d at 182 (first emphasis omitted).

The Court first determines whether Eckardt's right shoulder injury and bilateral carpal tunnel syndrome qualify as preexisting disabilities under the first step above. The Court then addresses whether Eckardt satisfied the second condition by showing he is permanently and totally disabled due to the combination of his primary injury and only those preexisting disabilities that qualify.

*Eckardt's Right Shoulder Injury Does Not Qualify as a Preexisting Disability*
*Because It Equals Fewer Than 50 Weeks PPD and a Load Factor Does Not Apply*

Eckardt argues the Commission should have applied a load or multiplicity factor to enhance the amount of PPD attributed to his non-qualifying right shoulder injury due to the "synergistic effects" of his injuries. When such load factor is applied, Eckardt argues the amount of PPD attributed to that injury, which the Commission determined equaled 46.4 weeks of PPD, rises above the 50-week threshold such that it can be considered in his PTD determination. This Court disagrees.

7

The "synergistic effect" or "load factor" analysis to which Eckardt refers historically came into effect only when a claimant sought **PPD** benefits under the pre-2013 version of the workers' compensation statutes. *Glasco v. Treasurer of Mo.*, 534 S.W.3d 391, 399 (Mo. App. 2017). Prior to the amendments, the Fund was liable for PPD benefits only when an employee satisfied three elements: (1) the employee sustained a compensable work-related injury resulting in PPD, (2) the employee had a preexisting disability that was of such seriousness to constitute a hindrance or obstacle to employment or reemployment, and (3) the work injury and the preexisting disability combined "to cause a greater degree of disability than the simple sum of the disabilities viewed independently." *Winingear v. Treasurer of Mo.*, 474 S.W.3d 203, 207 (Mo. App. 2015). The Fund was liable only for the "greater degree of disability" found in the third element, which was referred to as the synergistic effect, load factor, or multiplicity factor. *See Pierson v. Treasurer of Mo.*, 126 S.W.3d 386, 389 (Mo. banc 2004) (noting "the fund is liable in the amount of the increase in disability caused by the synergistic effect of the two injuries" found in the first and second elements). Even under the pre-2013 framework for PPD claims, the number of weeks constituting the synergistic effect for which the Fund was liable could not be broken down to correspond to individual preexisting injuries as Eckardt argues – it could be found only due to the combination of the primary and preexisting injuries.

Regardless, effective January 1, 2014, the legislature eliminated claims for PPD and, in so doing, also eliminated the attendant load factor analysis. § 287.220.3(2); *Parker*, 622 S.W.3d at 181. Under the current statutory framework, Eckardt is entitled to **PTD** benefits from the Fund only if he can establish two things: (1) he has a "medically documented

8

preexisting disability equaling a minimum of fifty weeks of [PPD] compensation" that is "a direct result of a compensable injury as defined in section 287.020[,]" and (2) he "sustains a subsequent compensable work-related injury that, when combined with the preexisting disability … results in a [PTD]." § 287.220.3(2)(a)a-b. Nothing in this statutory framework, which this Court is bound to strictly construe, permits or even suggests a load factor may be applied to increase the amount of PPD attributed to a preexisting disability. The Court, therefore, rejects Eckardt's argument that a load factor should apply to his preexisting right shoulder injury.[4] Absent a load factor, the right shoulder injury does not reach the 50-week threshold and cannot be considered in combination with Eckardt's primary injury to determine if he is entitled to PTD benefits.

*Eckardt Failed to Show He Is Entitled to PTD Benefits Due to the Combination of His Primary Injury and Only His Qualifying Preexisting Disabilities*

Having established Eckardt's right shoulder injury does not qualify, the Court next determines whether Eckardt established that his primary injury rendered him permanently and totally disabled when combined with only those preexisting disabilities that qualify for consideration. *Parker*, 622 S.W.3d at 182. This Court concludes he did not.

---

[4] The court of appeals has recently split about whether a prior award of enhanced PPD may be applied to an otherwise non-qualifying injury to determine whether such injury meets the 50-week threshold. *Compare Ryan v. Second Injury Fund*, No. ED112149, __ S.W.3d __ (Mo. App. E.D. Nov. 26, 2024) (affirming the use of enhanced PPD in a PTD determination), *with Walton v. Treasurer of Mo.*, No. SD38504, __ S.W.3d __ (Mo. App. S.D. Mar. 20, 2025) (holding section 287.220.3 does not permit the use of a prior enhanced PPD award to add additional weeks of compensation to an otherwise non-qualifying injury in a PTD determination). This Court agrees with the Southern District's reasoning in *Walton* – as explained above, enhanced PPD should not be used in a PTD determination. *Ryan* and similar cases should no longer be followed on these grounds.

The doctor provided the only medical causation evidence in Eckardt's case and relied on all of Eckardt's preexisting injuries, including his non-qualifying right shoulder injury, in concluding Eckardt is permanently and totally disabled. In his most recent report, the doctor opined:

> When [Eckardt] had the addition of his neck injury, the combined symptoms related to his bilateral knees, the mechanical dysfunction of his **bilateral shoulders**, and the neuropathic dysfunction of his carpal tunnel symptoms combined with the mechanical and neuropathic problems emanating from his neck injury **causing** him to reach a tipping point where it was basically impossible for him to perform his job duties. The interplay between **his injuries**, made it more difficult to function efficiently at work and home.

(Emphasis added). Only one sentence later, the doctor provided his ultimate conclusion that Eckardt is permanently and totally disabled "as a direct result of the [primary injury] in combination with his preexisting medical conditions." It is clear the "preexisting medical conditions" to which the doctor referred included the bilateral shoulder issues he mentioned only a few sentences prior.

Eckardt argues the doctor merely concluded the primary injury, in combination with **any subset** of preexisting injuries, rendered Eckardt permanently and totally disabled. In other words, Eckardt asserts he established that **any one** of his preexisting injuries, when combined with his primary injury, renders him permanently and totally disabled. But that was not the doctor's opinion, as demonstrated above. Moreover, Eckardt misconstrues his burden. He was required to establish the primary injury results in PTD when combined with **only** preexisting disabilities that qualify. *Parker*, 622 S.W.3d at 182. In other words, he was required to prove the combination of his primary injury and his qualifying

10

preexisting disabilities, ***absent non-qualifying disabilities***, resulted in PTD. *Klecka*, 644 S.W.3d at 567.

Nothing in the record shows the doctor found Eckardt would still be permanently and totally disabled absent his non-qualifying right shoulder injury. To the contrary, the record shows the doctor considered all of Eckardt's preexisting injuries, irrespective of whether they qualify, to determine a PTD resulted. This was improper and insufficient to establish Fund liability. *See Parker*, 622 S.W.3d at 182 ("The existence of non-qualifying disabilities does not count against *(or for)* the claimant in evaluating whether he meets the second threshold condition." (emphasis added)).

Eckardt relies on *Obermann v. Treasurer of Missouri*, 681 S.W.3d 559 (Mo. App. 2023), but that case is distinguishable. There, the Commission reversed the ALJ's award of PTD benefits because the claimant's two experts (a medical doctor and a vocational expert) considered his non-qualifying injury in their general review of his case. *Id.* at 561-62. Because of this, the Commission held there was no evidence in the record that the claimant was permanently and totally disabled due to the combination of his primary injury with only qualifying preexisting injuries. *Id.* The court of appeals reversed the Commission's decision and explained "nothing prohibits a claimant's medical and vocational experts from *considering* non-qualifying disabilities in connection with their comprehensive review of a claimant's injury and disability history." *Id.* at 565. Honoring *Parker*, the court of appeals clarified "[w]hat they may not do is include non-qualifying disabilities in their ***causation*** opinion." *Id.* at 565 (emphasis added). Because there was repeated testimony from Obermann's vocational expert that Obermann was permanently

11

and totally disabled irrespective of his non-qualifying disability, the "ultimate causation conclusion that Obermann was PTD did *not* rely" on his non-qualifying injury. *Id.* at 562-65. That is simply not the case here - there was no medical causation evidence that Eckardt was permanently and totally disabled absent his non-qualifying injury.[5]

Eckardt urges this Court to conclude he is entitled to PTD benefits because logic dictates that an aircraft mechanic with a debilitating neck injury and any one of his preexisting injuries is permanently and totally disabled. But whether Eckardt is permanently and totally disabled and whether he is entitled to PTD benefits from the Fund are "entirely distinct questions." *Klecka*, 644 S.W.3d at 567. To be entitled to PTD benefits, Eckardt was required to specifically show the combination of his primary injury and his qualifying preexisting injuries, absent non-qualifying injuries, resulted in PTD. As was true in *Klecka*, "[t]here was no evidence [Eckardt]'s primary injury, combined with his qualifying preexisting disabilit[ies], resulted in PTD because he failed to elicit testimony from [his only] expert[] indicating he would still be rendered permanently and totally disabled, absent his non-qualifying injur[y]." *Id.* Accordingly, Eckardt did not meet his burden in establishing Fund liability, and his claim for PTD benefits was properly denied.

---

[5] Eckardt also relies on *Lynch v. Treasurer of Missouri*, 635 S.W.3d 573 (Mo. App. 2021), and *Hazeltine v. Second Injury Fund*, 591 S.W.3d 45 (Mo. App. 2019), to argue the Commission's decision is not supported by competent and substantial evidence. Eckardt asserts the Commission improperly disregarded the doctor's testimony that Eckardt is permanently and totally disabled and made no finding that the testimony was not credible. But the Commission did not disregard that testimony – rather, the Commission found the doctor's opinion did not legally establish Fund liability. As such, *Lynch* and *Hazeltine* do not apply.

## Conclusion

For the above reasons, the Commission's denial of PTD benefits is affirmed.

_____
ROBIN RANSOM, JUDGE

All concur.